PATTIE D. B. ARRINGTON v. J. P. ARRINGTON et al.

*Fraudulent Conveyances—Sale Under Execution—Trustee—
Purchaser with Notice—Husband and Wife—Her Choses in
Action—Security—Judgment—Release of part of Land bound
by—Divorce—Effect of Decree for, in Another State—Attor-
ney—Appearance by.*

1. Where an insolvent debtor conveyed property to one of his creditors, by a deed absolute on its face, for the purpose of securing the debt due the bargainee, and also to protect himself from security debts and pending suits, and at the same time took from the bargainee a bond to reconvey on the payment of the balance due bargainee, and afterwards said bargainee, at instance of the bargainor, purchased, at a sale under execution in favor of a third party, the interest of the bargainee in said property and took the Sheriff's deed therefor: *Held*, that whether said former deed was fraudulent and void as to other creditors or not, the Sheriff's deed would pass whatever interest remained in the debtor, in subordination, however, to his right to redeem in accordance with the terms of the bond, and upon payment of the additional sum advanced to secure the title.

2. The husband of a ward of said debtor, who was entitled to reduce her choses into his possession, having sued the debtor and his sureties on the guardian bond and obtained judgment, after the execution of the said deed by the guardian, the said debtor, and afterwards purchasing the land from said bargainee along with another person who had notice at the time, &c., and on suit brought by them against the guardian for possession, the land being sold, by consent of parties: *Held*, that the judgment on the guardian bond should be credited with such sum as the husband realized from the transaction.

3. A deed of release by the husband and wife, to one of several devisees of a surety on said guardian bond, of part of the lands devised by said surety, will not operate to exonerate other lands devised and subject to the judgment on the guardian bond in whole or in part.

4. In such case, the judgment attaching to all the lands of the deceased surety, partition among his devisees and heirs cannot impair the creditor's right to enforce satisfaction out of any of its parts; nor can it impair the right of the respective tenants to be relieved of a common burden by causing all to share in it, which right is unaffected by the creditor's subjecting some portion to the entire burden to the relief of the rest.

5. Where a wife who had resided here, *bona fide* removed to Illinois, and instituted an action for divorce in one of the Courts of that State, and the husband in this State appeared by attorney and defended the action there: *Held*, that he was bound by a decree for divorce on a verdict rendered in that action, and that his property rights in her estate here were terminated from its date.

6. A letter from the husband to an attorney in Illinois saying, " I write to you to employ you as my attorney in the suit of myself and wife now pending in your Court," and enclosing a retaining fee, is sufficient authority for the appearance of the attorney in the suit, notwithstanding his adding in a subsequent part of the letter, " If it should be necessary that I should fight the case," &c., and this authority, taken in connection with the attorney's appearing, moving for time to answer, filing cross interrogatories to interrogatories in behalf of the wife, with a commission to take depositions, made the defendant a party to the action, even though, during its progress, a motion was made, and refused, to withdraw the appearance of the attorney.

CIVIL ACTION, tried before *Shipp, J.,* at October Term, 1887, of the Superior Court of VANCE County.

W. H. Arrington, and Pattie D. B. Arrington, then his
wife, and sole plaintiff in the present suit, brought their
action as relators, in the name of the State, against her
guardian, L. N. B. Battle, A. H. Arrington and Thomas J.
A. Cooper, sureties to the guardian bond, and others, for the
trust estates, which had been wasted, and at Fall Term,
1871, of the Superior Court of Franklin, recovered judg-
ment for $8,878.30, with interest thereon from January 1,
1871, and costs. The judgment was docketed in that county
on September 11, 1871, and in Nash County on April 1 of
the next year.

The present action is prosecuted by the said Pattie D. B.,
as a *feme-sole*, upon an allegation that she has been divorced,
by a decree dissolving the bonds of matrimony, from her
husband, and is prosecuted to subject the personal, and, if
insufficient, the real estate of the deceased sureties, A. H.
Arrington and Thomas J. A. Cooper, to the payment and
satisfaction of said debt, the guardian being insolvent him-
self, and having, as administrator of the remaining surety,
John Evans, wasted his estate. The action is against the
devisees and executors, *nominatim*, of the estate of A. H.
Arrington, the administrator and heir-at-law of Thomas J.
A. Cooper and his widow, and her second husband, and
others, among whom have become parties defendant, Spier
Whitaker, trustee, and W. H. Morris & Sons, claiming as
assignees of the fund from the husband, W. H. Arrington.

The object of the suit is to have an account taken of the
personal and real estate of the said deceased sureties in the
hands of their representatives, devisees and heirs, and, if the
former prove insufficient, for a sale of said lands and the
appropriation of the proceeds, as far as needed, to the dis-
charge of the said judgment.

Answers were put in, and a reference ordered, in response
to which a report was made by E. S. F. Giles of the admin-
istration accounts of the executors of A. H. Arrington with

the estate of their testator, and of J. W. Blount, administrator of Thomas J. A. Cooper, with the intestate's estate. From this report it appears that the personal estate of A. H. Arrington has been fully administered and exhausted, leaving a sum overpaid and due the executor, J. P. Arrington, of $2,678.71, and in like manner due the executor, B. L. Arrington, of $69.71, computed to September 1, 1882.

It further appears that the defendant J. W. Blount has in his hands, ascertained and due December 4, 1882, an unexpended surplus of $2,985, and that the intestate in his lifetime paid on the judgment, with interest added, $3,644.44, and his administrator has since paid on it $4,771.84.

It further appears from an exhibit that W. H. Arrington and wife, in October, 1878, after the rendition of the judgment in their favor, made a deed to John P. Arrington, one of the executors of A. H. Arrington, and a devisee under his will, conveying all their "right, title and interest" in, and releasing from the lien of their judgment, and all other liens they may have, a tract of land described, and supposed to contain 500 acres, allotted to said John P. Arrington in the division of the testator's land, such interest being declared to be by reason of said judgment against the executors docketed in Nash County, wherein the land lies.

Under another order of reference, made at Fall Term, 1883, to R. A. P. Cooley, in the present cause, and after the removal of it to the Superior Court of Vance, he reports as follows:

· The payments made by Blount, administrator of the surety Cooper, out of the assets in his hands between September 25, 1874, and July 16, 1878, are in amount $3,557.45, while those made by the executor John P., between February 1, 1875, and February 16, 1876, are, in the aggregate, $2,000. ·

The residue of the judgment, after the last payment in July, 1878, due at that date, is $6,688.93, which sum, with

interest to December 1, 1884, $2,558.51, makes an aggregate due at that date of $9,247.44.

Of this sum, in an adjustment between the estates of the sureties, that due from Cooper, at the date aforesaid, is $3,489.13, and from Arrington, $5,758.30.

The value of the land released from the judgment is $4,000, and that of the residue of the real estate of the testator A. H. Arrington, situated in this State, is $25,000, while he owned real estate in Alabama of the value of $14,500.

There is a mortgage deed, executed on June 25, 1872, by one W. H. Rowland to the testator A. H. Arrington, as an indemnity against loss from suretyship on the former's administration bond, reported by the referee, on the liability whereof he finds due, on December 1, 1884, the sum of $7,568.87, consisting of principal and interest.

The referee finds to be due on outstanding liabilities of the testator's estate $6,612.14, whereof is due on the judgment $5,758.30; and to one Nancy Bunn $853.84; and the liabilities of the estate of Cooper on the judgment, $3,489.13.

These are the only unsatisfied claims against the two estates.

These two reports were confirmed by the Court, with the proviso that the defendants other than W. H. Arrington and his assignees, who were authorized to file an amended answer at the term, " may urge the defences set up in the said amended answer in reduction of the amount due on the judgment described in the complaint, or in the discharge thereof."

It was further adjudged that, out of the estate of said A. H. Arrington, there be paid to Spier Whitaker, trustee, $1,550, with interest from September 8, 1882, and the costs in the suit of T. S. Alford v. J. P. Arrington, pending in Nash Superior Court, and that, subject thereto, the balance due the executors be retained; that all other debts due said estate, as set forth in the two referees' reports, be paid by the

executors; and that the cause be referred to said Cooley " to find all issues of law and fact relating to the matter of defence set up for the first time in the amended answer," with certain other matters, not necessary to mention, with leave to the plaintiff, the said W. H. Arrington and his assignees, within sixty days, to reply thereto.

The referee accordingly made his report, submitting the evidence, from which, and the pleadings and admissions of parties, he finds that the said W. H. Arrington and the *feme* plaintiff intermarried in February, 1868, and prosecuted their suit upon the guardian bond against L. N. B. Battle, the principal, and the said A. H. Arrington, and Thomas J. A. Cooper, a living surety, and others, and made the recovery already stated.

That the only solvent sureties on the bond when judgment was rendered, and since, were said A. H. Arrington and said Cooper, and said judgment was also entered in Franklin Superior Court against L. F. Battle, and was docketed in Nash County on April 2, 1879.

That sundry payments have been made on said judgment by the personal representatives of A. H. Arrington and Thos. J. A. Cooper, which leave a balance appearing to be due on the 1st day of December, 1884, of $9,247.44, with interest on $6,688.93 from December 1, 1884. The amount due December 1, 1884, from Arrington's estate, was $5,758.30; from Cooper's estate, $3,489.13, as then appeared.

That A. H. Arrington died on the ____ day of _____, 1871, leaving a last will and testament, which was duly proved and recorded in Nash County, and the executors therein named, who have duly qualified as such, are the defendants, J. P. Arrington and B. L. Arrington, and the said testator's devisees are the following: J. P. Arrington, Mary Thorpe, wife of W. L. Thorpe (she is now dead and W. L. Thorpe is her sole devisee), Thomas M. Arrington, A. H. Arrington, S. L. Arrington, George

Arrington (he has died since the commencement of this suit, unmarried, without issue and intestate), Robert W. Arrington, J. C. Arrington, who appears by his general guardian, J. J. Battle.

Said parties are the only children of the testator, A. H. Arrington, the sole devisees and legatees under said will, and are each entitled to an equal share of his estate.

Thos. J. A. Cooper died in Nash County, intestate, and John W. Blount is his administrator. O. Williams was his widow, who has since intermarried with W. A. Williams, and his only child is Lizzie Cooper—all these being defendants herein.

That the value of A. H. Arrington's real estate in Nash County was $29,000, and of his real estate in Alabama, $14,500.

At the time of filing the undersigned's previous report, the outstanding liabilities of the two estates were ascertained and stated.

That on the 30th October, 1878, the plaintiff and her then husband, W. H. Arrington, executed a deed to J. P. Arrington, one of the defendants, releasing from said judgment certain land which he had acquired from the testator, A. H. Arrington, said land being worth $4,000. (For copy of said deed of release, see report previously filed by the undersigned.)

That the personal estate of the testator, A. H. Arrington, has been exhausted, and there is due to the executor B. L. Arrington, $269.71, and to the executor J. P. Arrington, $267.81, with interest in each case from September 1, 1882. The debt of $269.71 has, for value, been assigned by B. L. Arrington to J. P. Arrington. This indebtedness due to J. P. Arrington, $2,948.42, with interest from September 1, 1882, has been mortgaged to Spier Whitaker, trustee, to secure a debt of $1,550, with interest from September 8, 1882, and certain costs.

102—32

That the Rowland mortgage, described in the previous report of the undersigned, has been foreclosed under order of Court. (See judgment rendered at Spring Term, 1887, of Nash Superior Court, in the civil action entitled J. P. Arrington and B. L. Arrington, executors of A. H. Arrington, and others, against A. W. Rowland, executor, and another.) The land was sold for $3,500, and was bid in by J. P. Arrington for his father's estate.

That in 1869, on the 5th day of March, the said L. N. B. Battle conveyed valuable real and personal estate to A. G. McIlwaine and R. D. McIlwaine by a deed recorded in the Register's office of Nash County, in book 23, at page 580, the consideration expressed being $3,790, a debt due from said L. N. B. Battle to said McIlwaines. (This deed is produced in evidence, copy herewith filed, marked " N.") That said deed was made for the purpose of securing the debt to McIlwaines, and to defend the said L. N. B. Battle from the payment of surety debts and from the event of suits then pending against him, and was not intended as a fee-simple deed.

That on the same day of the conveyance to the McIlwaines, the said McIlwaines, by their agent, S S. Bridgers, made and executed to the said L. N. B. Battle their obligation, in the penal sum of seven thousand and six hundred dollars, to be void if the said parties should, upon the payment to them by the said L. N. B. Battle, on or before the 5th day of March, 1872, of the sum of three thousand one hundred and eighteen dollars and sixty cents, with interest from date, execute and deliver to him, the said Battle, or to any one whom he should elect, at any time he should require the same, a fee-simple and guarantee deed to all of said property, &c.; that on the same day the said McIlwaines, by their agent, S. S. Bridgers, made and delivered to the said Battle a paper-writing authorizing and empowering him to act as their agent in the management of said property.

That the said Battle, during the years 1870-1871, sent to the said McIlwaines, in Petersburg, Va., thirty-six bales of cotton, and directed them first to pay an account which he owed them for supplies, and to give him credit for the balance of the proceeds of said cotton on the debt due them for the purchase of the aforesaid property, which they did.

That in August, 1871, G. N. Lewis, Sheriff of Nash County, by virtue of an execution in his hands in favor of W. W. Parker and against said L. N. B. Battle, sold the interest of said Battle in the real estate conveyed by said deed, at which sale the said A. G. McIlwaine and R. D. McIlwaine, at the request of the said Battle, became the purchasers at the price of fifty dollars, and took the Sheriff's deed therefor. (See exhibit "I," herewith filed.) The said McIlwaines paid, at the request of the said Battle, $350 to said Parker, he having agreed to accept that in discharge of his debt, which amounted to about $700; that the said McIlwaines, after they had made the purchase, told the said Battle that whatever interest they acquired by said purchase they would convey to the defendant upon the payment of the amount expressed in the aforesaid obligation, and the three hundred and fifty dollars paid by them to Parker added.

That on the 6th day of June, 1872, the said McIlwaines made and executed to B. H Bunn a power of attorney, authorizing him, in their name, to dispose of their interest in said property to such persons as to him should seem best. (A copy of this document herewith filed, marked " D ")

That negotiations were then had between said B. H. Bunn and said L. N. B. Battle, touching the amount of the indebtedness due from the latter to said McIlwaines, and for the settlement of the same; and said Battle's friend, Wm. Rich, agreed to advance whatever amount was justly due as aforesaid from said Battle, and to take a conveyance of the legal

title to said property, to hold in trust for the security of the sum so advanced.

That on the 29th day of August, 1872, the said McIlwaines (through their attorney in fact, B. H. Bunn) sold and conveyed all their interest in said property to the defendant W. H. Arrington, and L. F. Battle, for $5,280, and one of the grantees, L. F. Battle, had notice that the said McIlwaines held in trust, and that the sum above mentioned was the amount claimed by them, and for the security whereof they held the legal title. (See exhibit "P," herewith filed.)

That said property was worth $10,967.70.

That on the 2d of November, 1872, the said W. H. Arrington and L. F. Battle brought suit against the said L. N. B. Battle for the recovery of the possession of said property, and other relief. (See exhibit " A," herewith filed.)

That at Spring Term, 1874, in said Court, in said action, a decree by consent, signed by the attorneys of the parties and approved by his Honor S. W. Watts, was rendered, appointing Calvin Ward and N. W. Boddie receivers and commissioners, and directing them to sell the real and personal property described in the deed from L. N. B Battle to the McIlwaines and in their deed to W. H. Arrington and L. F. Battle. (Copy of said decree will be found among papers marked " A.")

That on the 21st April, 1874, the said commissioners sold said property for the aggregate amount of $10,967.70; that a report of sale was filed and confirmed at Fall Term, 1874, the commissioners being therein directed, after paying costs ($31.50) and retaining $300 for their services, to divide the residue of the proceeds of sale equally between the said W. H. Arrington and L. F. Battle, which was done accordingly. (See exhibits " B " and " C," herewith filed. )

I find as matters of law :

1. That if all of the legatees and devisees of A. H. Arrington were jointly responsible for the debts of the testator, the

effect of the deed of release from W. H. Arrington and Pattie D. B. Arrington to J. P. Arrington would be to discharge a part of the judgment debt described in the complaint equal to the ratable portion thereof chargeable on the land released.

2. That L. N. B. Battle had an equitable estate in the property conveyed to the McIlwaines, which was subject to the lien of the judgment described in the complaint.

3. That W. H. Arrington had full control over said judgment, with power to collect the same or release or discharge it.

4. That W. H. Arrington is to be treated as having been paid on said judgment the amount he received from the commissioners, N. W. Boddie and Calvin Ward, less the amount he paid to the McIlwaines ($2,640), and the judgment is, *pro tanto*, discharged to that extent as to him and the plaintiff.

5. That the purchase of said property by the McIlwaines from G. N. Lewis, Sheriff, inured to the benefit of the *cestui que trust*, L. N. B. Battle.

6. That the latter's interest in said property was not a pure unmixed trust, that could be sold under a *fi. fa.*, and hence said purchasers by said purchase acquired nothing.

7. That said Battle's interest in said property being certainly worth what it was sold for, less the amount of the debt secured to the McIlwaines, the judgment is to be credited as of April 21, 1874, with $10,967.70, less the secured debt due the McIlwaines, and $331.50 costs, with the interest of course added to McIlwaine's debt.

8. That the said L. N. B. Battle is not entitled to credit of $1,000, on account of cotton shipped the McIlwaines, as the evidence shows that this cotton was applied elsewhere than in discharge of said secured indebtedness.

9. That the said W. H. Arrington and L. F. Battle had

constructive notice of the trust existing in the hands of the McIlwaines sufficient to put them on inquiry.

10. That the following is a more exact statement, showing what credit ought to be applied to said judgment described in the complaint (this aside from the discharge on account of the deed of relase above mentioned):

| | | | |
|---|---|---|---|
| Property was sold April 21, 1874, for | | | $10,967 08 |
| Ten per cent. cash | $1,096 | 77 | |
| Deduct costs and commissions | 331 | 50 | |
| | $ 765 | 27 | |
| Int. to January 1, 1875 | 31 | 88 | |
| Ninety per cent. deferred payment due | | | |
| January 1, 1875 | 9,870 | 93 | |
| | $10,668 | 08 | |
| Amount received by W. H. Arrington, | | | 5,334 04 |
| Amount of McIlwaines' debt, August | | | |
| 29, 1872 | 5,280 | 00 | |
| Interest to January 1, 1875 | 739 | 25 | |
| Making | 6,019 | 25 | |
| One-half paid by W. H. Arrington | 3,009 | 62 | |
| Leaving a difference between the | | | |
| amount paid by W. H. Arrington | | | |
| and the amount he received of | | | $2,324 42 |

which, it is respectfully submitted, should be applied to the discharge of the judgment described in the complaint, so far as it will go, and this as of January 1, 1875. The said W. H. Arrington could have applied this amount to the said judgment, and equity will consider it so applied.

Judgment will fix the undisputed rights of Mrs. Nancy Bunn, J. P. Arrington, executor, and Spier Whitaker, trustee.

All of which is most respectfully submitted.

The defendants, other than W. H. Arrington and his assignees, filed twelve exceptions to the report, of which all but that numbered 2 were overruled, and that alone sustained, while the plaintiff Pattie D. B. filed thirteen, whereof those numbered 1, 3, 4, 6, 7, 9, 10, 11 and 12 were sustained, and those numbered 2, 5, 8 and 13 were overruled, and judgment having been entered, which was subsequently modified, the defendants, other than W. H. Arrington and W. H. Morris & Sons, appealed.

*Mr. Spier Whitaker*, for the plaintiff.

*Mr. E. C. Smith*, for W. H. Arrington and W. H. Morris & Sons; *Mr. Jacob Battle*, for the other defendants.

SMITH, C. J. (after stating the case). The referee disallowed the credit of $1,000, claimed upon the consignment of cotton to the McIlwaines, or any abatement of the debt by reason of the deed of release to John P. Arrington of the judgment lien upon his land, but does admit a deduction therefrom to the amount of the excess received on the sale of the land of L. N. B. Battle, the principal debtor, over the moneys expended in obtaining the title thereto.

The rulings of the Court disallow any abatement of the debt for these causes, and charge the estates of both sureties, *in solido*, with the whole debt, and fix the executors with personal assets to the amount of $3,500, devised under the Rowland mortgage.

Without a minute inquiry into the terms of each of the exceptions specifically, the appeal, in substance, brings up, for review, the rulings upon points mentioned, and to such we confine our attention.

The appellants (and in using the term we do not include, in considering this part of the appeal, the said W. H. Arrington and his assignees, whose interests are those of the plaintiff herein) insist as follows:

1. The Court erred in overruling the referee in disallowing the credit for the excess received in disposing of the land of the guardian, obtained from the McIlwaines, by which the referee reduced the judgment debt. This sum, it is said, belonged to the principal, and being received by the husband, while entitled to reduce into possession, and apply to his own use the wife's choses in action, must be deemed a reduction into possession and discharge of so much of the debt as if a direct payment had been made. The facts connected with this exception are fully set out in the referee's findings, and do not require repetition. Sections 13 and 14, and, again, sections 16 to 23 inclusive.

Whatever infirmities may exist in the conveyance from L. N. B. Battle to the McIlwaines, from the fraudulent intent of the former, as between the parties, it was effectual, and subject to the condition for redemption contained in the contemporaneous sealed instrument given by the bargainees to the bargainor. The title was made good under the execution sale, under the judgment recovered by W. W. Parker, at which the said McIlwaines bought whatever estate remained in the judgment debtor, and took the Sheriff's deed therefor, at the instance of the latter. This, if the deed was fraudulent, would pass, not the right retained to redeem, but the full legal estate, as if no conveyance had been made. But it would still be held by the purchasers, in subordination to the debtor's right of redemption, upon payment of the additional sum advanced to secure the title at the request of Battle. These sums constituted the incumbrance, the removal whereof entitled him to a reconveyance. In this condition, and while Battle was negotiating to raise the requisite amount, which one William Rich agreed to pay, and take the title and hold it as a security therefor, the said McIlwaines, through their attorney in fact, sold and conveyed, for the consideration of $6,280, the said land to said W. H. Arrington and L. F. Battle, this sum being

claimed by the grantors as that for which the property was held as a security. An action was brought by the said purchasers against Battle, who had remained in possession, to recover the same, and for other relief, in which, by consent, a decree of sale was entered, and, pursuant thereto, the premises were put up for sale on April 21, 1884, and brought the sum of $10,967.70. This sum, after deducting expenses. of the suit and sale, $331.50, was divided between the plaintiffs in the action. The appropriation of the moiety by the said W. H. Arrington to his own use was of moneys belonging to the principal debtor, Battle, for which, in equity, the latter was entitled to a credit, and therefore must be regarded. as a reduction into his possession of so much of the chose in action as if directly paid by him. The self-adjustment is but the enforcement of an equity to have the sum thus received applied as a payment upon the debt, the husband having then the right to collect it, or any part of it, and appropriate the sum collected to his own use.

We, therefore, reverse the ruling of the Judge, and restore that of the referee in respect to this sum.

2. The appellants claim a further reduction of the judgment by reason of the deed of release given the executor and devisee, John P. Arrington, on land of the value of $4,000, and an exoneration altogether or *pro tanto* of the remaining lands liable for the debt. We are unable to give either effect to the act of exoneration, as demanded by the appellants. If this was done to enable the devisee to make sale of the land unencumbered, the personal liability of the said John P. would remain to account for the funds received therefor in an apportionment of the loss among the different terre-tenants, and if retained itself would not escape the obligation to contribute. The rule in equity, under which an exemption results from the release of one of several sureties to the same obligation to the others, is personal, and does not prevail, even in such cases, when there is but an agree-

ment or covenant not to sue, and the relinquishment of a right to proceed against one of several tracts of land with different owners is, in legal operation, but an agreement to look only to other lands, alike subject to a lien, as a means of satisfaction. *Dudley* v. *Bland*, 83 N. C., 220, and cases cited.

If there were a right of exoneration, it would be confined to such excesses required of others, over and above the aliquot portion of each—the release operating only as would a payment, leaving to all others the duty of contributing their ratable parts.

But the judgment here attaches to the *entire* real estate of the said A. H. Arrington as a unity, and the subdivision into parts, upon a partition proceeding, cannot impair the creditor's right to enforce satisfaction out of any of its parts, as that right existed in the testator's life-time, nor can it impair the right of the respective tenants to be relieved of a common burden, by causing all to share in it, a right unaffected by the creditor's action, in subjecting some portion to the entire burden in relief of the residue. The contribution is the consequence of the relations of tenants who have made partition, which the creditor cannot destroy or impair.

We, therefore, uphold the ruling of the Court which sustains the action of the referee in refusing any abatement of the debt on this account.

3. The further reduction demanded in the McIlwaine debt, for the proceeds of cotton consigned, above the debt incurred for supplies, thereby enlarging, by the value of the excess of $1,000, the sum with which the judgment should be credited, upon the resale of the land, cannot be allowed, for the reason that the sum went into the hands of Battle as his homestead exemption. This was surrendered to him in the suit to recover the land, and never having been received by W. H. Arrington, could not be applied to a payment upon the judgment; for if it ought to have been

thus collected and applied, and a personal liability rests upon him for the loss, it is not money received, and cannot diminish the debt as if in fact paid.

These embracing the substantial matters presented in the record, we do not find it needful to pursue and discuss the exceptions in detail outside of those disposed of, and in general terms deem it sufficient to say that, except in the error pointed out, the judgment must be affirmed, when modified in accordance with this opinion.

Upon the trial of this issue, the record of proceedings in said Court was exhibited in evidence, and parol proof offered.

The defendant W. H. Arrington. and W. H. Morris & Sons, his assignees, asked of the Court the following instructions, predicated upon the evidence:

" 1. That upon the *whole* evidence W. H. Arrington did not appear either personally or by any duly constituted attorney in the said action for divorce, and therefore the decree pronounced in said action is null and void.

" 2. That the courts of Illinois had no jurisdiction of this cause of action, and hence the decree is null and of no effect in North Carolina.

" 3. That the Courts of Illinois had no jurisdiction of or over W. H. Arring on, he never having been an actual resident of said State, and hence the decree in said cause is void and of no effect in North Carolina.

" 4. There is no evidence to show that an appearance by attorney gives the Court jurisdiction of a party in the State of Illinois, and therefore, even though appearance had been made by attorney in said Court of said State, unless the statutes of said State regulating said appearance had been proven, such decree cannot be sustained under our law.

" 5. That if Mrs. Arrington went to Illinois for the purpose of obtaining a divorce from the said W. H. Arrington, the decree granting such divorce is null and void.

" 6. There is no evidence to show that a residence of one year is sufficient to obtain a divorce in Illinois, for that the statutes of Illinois regulating the length of residence in that State requisite to render competent a suit for divorce in the courts of that State have not been proven as by law required."

The presiding Judge instructed the jury as follows :

" There is but one issue or question submitted to you to pass upon in this case, and that is whether the plaintiff and the defendant, W. H. Arrington, were divorced by the decree of the Court in Illinois, which has been read to you in evidence. You see there was a decree or judgment of that Court, granting to Mrs. Arrington a divorce from her husband.

" And the question for you is whether that judgment is of legal, binding effect here. If it is, your answer should be, 'Yes' ; if it is not, and she is still his wife by the laws of North Carolina, you should answer 'No'.

" You are the sole arbitrators of the fact, but your judgment is controlled by the law, and it is incumbent upon me to explain to you the principles of law which govern this case, and they are not difficult nor perplexing. In the first place, did Mrs. Arrington have such a domicile in the State of Illinois, at the time the suit for divorce was instituted, as gave the courts of that State jurisdiction over her cause ? Ordinarily, the domicile of the husband is the domicile of the wife, and the authority to fix that domicile is in the husband. But there are circumstances which would warrant the wife in changing her domicile. For instance, if the husband should, by cruel or barbarous treatment, endanger her life, or should offer such indignities to her person as to render her condition intolerable and her life burdensome, in either of these cases the wife would have the right to change her domicile; and there is no law which would require her to remain in North Carolina.

" If it were more convenient to her or more pleasant to her to live in another State or another country, she would have the right to do so. Now, apply these principles which I have laid down.

" Did the husband, W. H. Arrington, afford to his wife the home which he ought to have done and the treatment which is due from husband to wife, and this is, at the least, kindness, support, protection; or did he treat her in such a manner as to render her condition intolerable and her life burdensome?

" If he treated her with kindness, and afforded her the support and protection which he ought to have done, and was unwilling for her to change her domicile, she would have no right to leave him. But if he treated her with such indignities, or acted in either of those ways which I have cited to you as affording her just cause for leaving him, she had a right to leave him and to select her own place of residence, either in this State, in Illinois, or anywhere else. If she left him without cause, and went to Illinois, not with the *bona fide* intention of living there, but simply for the purpose of obtaining, through the courts of that State, a divorce from her husband, it would be a fraud upon the jurisdiction of the courts of that State, even if she remained there for one year, as required by the statutes of Illinois, before bringing her action for divorce; and if, after considering the evidence which has been submitted to you, and the instructions which I am now giving you, you come to the conclusion that she had no just cause for this step, and was not acting in good faith, as I have described, then you should answer, ' No;' *i. e.*, they were not divorced.

" But if she had good cause to leave him for any of the reasons I have given you, and did go to Illinois with the *bona fide* intention of residing there, even though she intended to sue for a divorce, and remained there a year, she had the right to bring her suit for divorce against him there, and if

he appeared there in person or by authorized counsel, and .so recognized the jurisdiction of the court over him, he is .bound by its decrees, and you will answer, ' Yes;' *i. e.*, they were divorced by the decree of the Circuit Court of Sanga- mon County, Illinois.

"Now, if you have come to the conclusion that she did .have cause to leave her husband, and went to Illinois with the *bona fide* intention of remaining there, I instruct you that the letter of defendant of August 5, 1880, to Clinton L. Conkling, attorney, gave him (Conkling) full authority to enter an appearance; and as he did enter an appearance in the month of August, the Court of Illinois thereby acquired .jurisdiction over him, which it could not have done by per- sonal service in North Carolina, nor by publication, and you will answer, ' Yes.'

"But if you find that she had no cause to leave her hus- band, and did not go to Illinois with the *bona fide* intention of remaining there, but simply to stay there long enough to enable her to bring her suit for divorce, the Court had no jurisdiction, and you will answer, 'No.'"

Defendants excepted to the refusal to give the special instruction as asked, and to the instruction as given.

The jury responded to the issue, "Yes."

·  The sum to be paid being ascertained, we are next to inquire whether it belongs to the plaintiff or is subject to the disposal of her husband or his assignees, and this depends upon the efficacy of the decree of divorce *a vinculo* obtained by her in the proceeding instituted in Sangamon Circuit ·Court, sitting in Chancery, in the State of Illinois, against him for that purpose in dissolving the bonds of matrimony and reinstating her in the possession of all· her property rights as a *feme-sole*. Upon an issue framed to raise the question, .and under instructions of the Court, the jury responded in .the affirmative.

In our opinion, the directions given to the jury in passing upon the issue properly presented the matter, and the law bearing upon it, for an intelligent rendering of the verdict. The *bona fides* in the act of removal was made an essential element in giving the jurisdiction invoked in a decree of separation that puts an end to the marriage relation.

We sustain also the instruction that the communication to the attorney in Illinois, dated on August 5, 1880, conveys an authority to him to appear in the cause for her husband, and warranted his action in the premises. In it he uses these words: " I write to employ you as my attorney in the suit of myself and wife, which is now pending here and *in your Court.* I herewith enclose you ten dollars for advice and retaining fee in the case." It is true, in the concluding part of the letter, after detailing his domestic troubles, he adds: " If it should be necessary that I should fight the case, then I am willing to pay you a liberal fee to appear for me. Please answer at once, and write me what you will charge me to appear in the case, or what you will charge me to guarantee me my success in the case and possession of my children."

This indicates some misgiving as to what course should be pursued, but does not recall the previous employment.

When depositions in the cause were to be taken for the plaintiff, interrogatories on her behalf were sent out with the *dedimus protestatem* to one Harper, as commissioner, in Nash County, to which were added cross-interrogatories, signed Clinton L. Conkling, attorney for defendant, and with this endorsement, "Filed September 6, A. D. 1880. James A. Winston, Clerk."

The commission was executed, the depositions taken, and direct and cross interrogatories answered, and return made to the Court.

Again, the record contained this entry, made on October 4, 1880, a term day of said Court:

"PATTIE ARRINGTON, *Complainant,* ⎱ In Chancery:
           v. ⎰
WILLIAM H. ARRINGTON, *Defendant.*        For Divorce.

Now, at this day, come the parties hereto, by their solicitors, and the complainant, by her solicitor, moves the Court that defendant be required to file his answer to the bill of complaint, whereupon, the defendant, by his solicitor, C. L. Conkling, moves that the time for filing defendant's answer be extended to the 4th day of November next, which is allowed, and it was thereupon ordered that the said defendant file his answer to said bill by said 4th day of November."

Subsequently, application to withdraw the appearance was made and refused, and the cause proceeded, without further interference from defendant's counsel, to a final determination.

The understood and exercised power to interpose thus introduces the defendant into the action, and the Court, thus having jurisdiction of the subject-matter and of the parties, may proceed to final judgment, and it becomes binding and conclusive on both, as a dissolution of the relation. We are not disposed to concede this effect to a proceeding wholly *ex-parte*, and wherein no personal service of process is made on the defendant, and he is brought in by publication under the local law of the State, as is strenuously, but unnecessarily, pressed in argument, though in direct conflict with the case of *Irby* v. *Wilson*, 1 D. & B. Eq., 568, a decision which has not been disturbed since its rendition, in 1837, by the eminent Judge who then constituted one of the Court, as to the extra-territorial effect of such a decree upon a non-resident defendant. There are cases, and some are cited in the brief of the plaintiff's counsel, to the effect that an *ex-parte* decree of divorce, obtained by one who has a domicile in the State in which the Court is held that grants it, operates

as a change of the status of the plaintiff, and its efficacy prevails everywhere. Such is the ruling in *Ditson* v. *Ditson*, 4. R. I., 87, based on Art. IV, sec. 1, of the Constitution of the United States. Such is declared to be the result where the husband resided in Connecticut with his wife, deserted her, and left the State, and she obtained divorce in one of its courts. *Hull* v. *Hull*, 2 Stroth., S. C., 174.

Such a proceeding is recognized as valid in the State granting it, because authorized by its laws, as well as to the marriage relation as to rights of property, growing out of the relations, situated within its jurisdiction. *Harrison* v. *Harrison*, 19 Ala., 499.

There are admitted difficulties in reconciling the rulings which determine the status of a resident plaintiff, without determining, at the same time, that of the non-resident defendant, where the relation subsists between the two, and what disunites the one fails to disunite the other; and, on the other hand, to take from one who has never been served with personal process, by a foreign judgment, not only personal, but property rights, possessed beyond the jurisdictional limits. These difficulties may be removed by harmonious and consistent legislation, which they seem to invite. But our province is to interpret, not to make, the law, and we must abide by that of our own State. The case most relied on, or at least most largely quoted from, in the brief therein, *Cheever* v. *Wilson*, 9 Wall., 108, does not sustain the contention of counsel. The husband, who, with his wife, resided in Washington City, on her removal to Indiana, and instituting the suit against him for divorce, both put in his answer thereto and filed a bill against her, to which she appeared without process. The controversy was as to the residence of the wife, and the acquirement of jurisdiction in the Circuit Court of Indiana.

The present case has peculiar features in its claims for recognition in this State. The marriage contract was entered

102—33

into here, and the facts alleged, which form the grounds of the divorce, occurred here, and are insufficient to warrant a disruption of the marriage tie, and are cause for a separation only. They are adjudged sufficient in Illinois, whose Court takes cognizance of the complaint and decrees a dissolution. Could the Court of this State, were the defendant not a party, permit the rights of property in the wife's estate to be divested and taken from him? Would it not be, intended or not, an evasion and fraud upon our law to allow to the decree such an operation? We should be slow to recognize such a result. But the point does not arise, though discussed in a contingent aspect of the case for the plaintiff, since the defendant, by the act of his counsel and under his authority, has become a voluntary party to the action, and submitted to the jurisdiction of the Court in the premises, so that he must abide by the consequences.

The plaintiff, ceasing to be the wife, is to be reinstated to the right of all her choses in action, not reduced to possession by her husband, before the entering up the decree of separation. This is the settled law upon the subject.

In *Slave* v. *Peace*, 8 Conn., 541, the effect of a legislative divorce upon rights of property, arising out of marriage in extinguishing it, was earnestly contested as a violation of the contract, under the Federal Constitution, but it was sustained and put upon the same footing as a judicial divorce, and such is now the declared law in reference to each mode of separation *a vinculo matrimonii.* 1 Bishop Mar. and Div., section 693.

" Personal choses in action which belong to the wife, reduced into possession by the husband, in the words of a recent author, remain his, but as to rights dependent on marriage, and not actually vested, a full divorce or the legal annihilation ends them." Schouler's Dom. Rel., § 221, and authorities cited in the notes.

The rule is supplemented by our act of 1871–'72 (*The Code*, § 1843), which puts an end to an estate in dower or by curtesy, a claim to the year's provisions or distributive share in the estate of either, the right to administer, and "every right and estate in the real or personal estate of the other party, which, by settlement before or after marriage, was settled upon such party in consideration of the marriage only."

The judgment will be thus modified and affirmed.

Modified and affirmed.