,ARRINGTON v. ARRINGTON.

(November 20, 1900.)

1. *Judgment—Foreign Judgment—Divorce—Alimony—Res Judicata.*

> Under Federal Constitution, Art. 4, sec. 1, a judgment for divorce, rendered in another State, is *res judicata*, and binding on the parties in an action on the judgment.

2. *Limitation of Actions—Judgment—Lex Fori—Foreign Judgment.*

> The plea of the statute of limitations in an action on a foreign judgment is a plea to the remedy and the *lex fori* should govern.

3. *Limitation of Actions—Judgment—Alimony.*

> In an action on a judgment for alimony, payable annually, the annual sums are barred within 10 years from the time they become due.

CLARK and DOUGLAS, JJ., dissenting.

ARRINGTON *v.* ARRINGTON.

CIVIL ACTION by P. D. B. Arrington against W. H. Arrington, heard by Judge *W. A. Hoke,* at April Term, 1900, of WAKE Superior Court. From judgment of nonsuit, plaintiff appealed.

*Douglass & Simms,* for plaintiff.
*B. H. Bunn* and *F. S. Spruill,* for defendant.

FAIRCLOTH, C. J.   It appears from the record in this case that the plaintiff and defendant were married in North Carolina about 1869, and that they lived together as man and wife in said State until the year 1879, when the plaintiff removed to the State of Illinois, and acquired a residence in that State; the defendant remaining a citizen of North Carolina until the present time.   It also appears that the plaintiff, after acquiring her legal residence in the State of Illinois, about 1879, or 1880, instituted an action, or bill, for divorce against the defendant in the Circuit Court of Sangamon County, in said State of Illinois (a court of competent jurisdiction), alleging facts and matters, such as the violence and cruel treatment of her husband, as would entitle her in North Carolina to a divorce a *mensa et thoro,* which matters are adjudged in the State of Illinois sufficient to authorize a decree of dissolution of the bonds of matrimony; that is, a divorce a *vinculo.*   After notice by publication, etc., the defendant appeared in said proceeding by an attorney; and in November, 1881, it was adjudged and decreed in said proceeding that the plaintiff be divorced and separated from the bonds of matrimony theretofore existing between her and her husband, the defendant therein, and that she have the care, custody, and education of their children.   It was also adjudged that the defendant pay to the complainant for her alimony and maintenance, annually, the sum of $154, until the further order of the Court (said payments beginning and

dating from June 1, 1879, and to be payable semi-annually),
and that the defendant also pay annually to the complainant
$300 for the care, custody, support, and education of their
children, payable semi-annually until the further order of the
Court (said last payment to begin and date from June 1,
1879). The plaintiff, now a resident of North Carolina,
brought this action to recover the amount due on said Illinois
judgment, alleging non-payment of the same, and files a duly
authenticated transcript of said record and judgment in this
action. The effect of this judgment on the property rights of
the plaintiff was before this Court in 1889, in *Arrington v.
Arrington,* 102 N. C., 491, and it was held that said Illinois
judgment of divorce was valid and binding. In the present
action, among other defenses, the defendant relies on the
statute of limitations. At the trial, when the pleadings were
read, his Honor was of opinion that the plaintiff's action was
barred by the statute, and thereupon the plaintiff took a non-
suit and appealed.

It is admitted that by the law of Illinois, alimony may be
allowed when an absolute divorce *a vinculo* is granted. We
might dispose of this appeal on this simple ruling, but an-
other question is important to be settled and understood, to
which the arguments were chiefly addressed, and we feel that
it is proper to consider it. That question is, what is the
force and effect of said judgment when sued upon in North
Carolina, where both parties now reside. Is it *res adjudicata,*
and binding on the parties, or can the defendant now plead to
the merits of the original cause of action? This depends
upon the construction given to Article 4, sec. 1, of The Con-
stitution of the United States, in these words: "Full faith
and credit shall be given in each State to the public acts,
records and judicial proceedings of every other State. And
Congress may, by general laws, prescribe the manner in

which such acts, records, and proceedings shall be proved, and the effect thereof." By the act of May 26, 1790, c. 11, Congress provided for the mode of authenticating the records and judicial proceedings of the State Courts, and then further declared that "the records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the Courts of the State from whence the said records are or shall be taken." At common law the judicial proceedings, etc., of foreign nations are not taken notice of, nor admitted as of course, by our Courts. They must be proved like other facts when brought into controversy in any suit. Whatever regard for them has been shown is the result of treaty, or mere comity. In the American colonies, before the adoption of our Constitution, there was no uniform rule as to judgments in other colonies. Some of the colonial Courts held these judgments conclusive; some hold that they were not; some, that they were *prima facie* valid, open to be controverted by new proofs, etc. So that there was little or no extra-territorial force or effect given to foreign or domestic judgments. The latter were uniformly held conclusive on the parties in the colony, or State in which they were rendered, and not open to be controverted or impeached with new proofs. No one will fail to see how inconvenient this system, before the adoption of our Constitution, must have been, and the attending danger of the grossest injustice. Suppose a judgment in one State, in a court having jurisdiction, after a trial and verdict by a jury upon a contract, or for a trespass or other just cause of action, in a place where all the witnesses lived; and after awhile the defendant should reside in another State, and material witnesses should die or remove, so that their testimony could not be had, and the defendant in a new suit could controvert

anew all the facts found by the jury in the original suit, and so again and again; there could be no certainty of any just redress to the plaintiff. It must have been the purpose, therefore, of the Constitution (Art. IV., sec. 1), with appropriate legislation, to suppress this irritation and mischief between citizens of different States, by declaring that full faith and credit should be given to the judicial proceedings, etc., of every other State. Any other interpretation would give no efficacy to that clause, and leave suitors in the same condition as they were before Art. IV., sec. 1, was adopted.

In 1813 the question was presented to the Supreme Court of the United States in *Mills v. Duryee,* 7 Cranch, 481, and it was held that *"nil debit* is not a good plea to an action founded. in a judgment of another State." There a valid judgment had been rendered in New York State, and upon the certified copy a suit was instituted in the District of Columbia. *Story,* J., for the Court, said: "It is argued that this act provides only for the admission of such records as evidence, but does not declare the effect of such evidence when admitted. This argument can not be supported. The act declares that the record, duly authenticated, shall have such faith and credit as it has in the State Court from whence it is taken. If in such court it has the faith and credit of evidence of the highest nature (viz., record evidence), it must have the same faith and credit in every other court. Congress has therefore declared the effect of the record by declaring what faith and credit shall be given to it.   *   *   *   Another objection is, that the act can not have the effect contended for, because it does not enable the courts of another State to issue executions directly on the original judgment. This objection, if it were valid, would equally apply to every other court of the same State where the judgment was rendered. But it has no foundation. The right of a court to

issue execution depends upon its own powers and organization. Its judgments may be complete and perfect and have full effect, independent of the right to issue execution." "A decree for the pay of alimony, like any other money decree, may be collected by execution, where the decree does not provide for its being executed by a master in chancery, or a commissioner. An execution may issue precisely as upon a judgment at law." *Dinet v. Eigenmann,* 80 Ill., 274. In 1818, the question came up in *Hampton v. McConnell,* 3 Wheat., 234, where MARSHALL, C. J., said: "This is precisely the same case as that of *Mills v. Duryee, supra.* The doctrine there held was that the judgment of a State court should have the same credit, validity, and effect in every other court in the United States which it had in the State where it was pronounced, and that whatever pleas would be good to a suit thereon in such State, and none others, could be pleaded in any other court in the United States." The same conclusion is repeated in *McElmoyle v. Cohen,* 13 Pet., 312; *Christmas v. Russell,* 5 Wall., 303, and *Cheever v. Wilson,* 9 Wall., 123, and others.

The question and the authorities are reviewed in *Barber v. Barber,* 21 How., 582. The parties resided in New York, where a decree of separation *a mensa et thoro* was entered. It was also adjudged that, for the purpose of maintenance of Mrs. Barber, there should be allowed and paid to her by the defendant, in quarterly installments, the annual sum of $360 in each and every year, from the day the bill was filed, during her life, and in case it was not so paid, the quarterly payments should bear interest as they respectively became due, and that execution might issue therefor, *toties quoties.* It was also decreed that the defendant should pay forthwith $960, being the alimony retrospectively due, and the plaintiff should have execution therefor. Soon after the decree of

divorce and for alimony was made, the defendant removed to the State of Wisconsin, without paying any of the alimony due; and, upon a duly authenticated transcript of the papers in that suit, a suit was instituted in Wisconsin for the amount of the alimony due by the defendant. The case went to a hearing on the pleadings and proofs, and a judgment was entered in favor of the plaintiff according to the judgment in New York; and on appeal, the Supreme Court of the United States held that the court of Wisconsin had committed no error in sustaining its jurisdiction, nor in the decree which it had made. In this case, the Court remarks: "The parties to a cause for a divorce and for alimony are as much bound by a decree for both which has been given by one of our State courts having jurisdiction of the subject-matter and over the parties as the same parties would be if the decree had been given i nthe ecclesiastical court of England. The decree in both is a judgment of record, and will be received as such by other courts. And such a judgment or decree rendered in any State of the United States, the Court having jurisdiction, will be carried into judgment into any other State, to have there the same binding force that it has in the State in which it was originally given." When the marital control and protection have been lost by a judgment of divorce, a decree for alimony "becomes a judicial debt of record against the husband, which may be enforced by execution or attachment against his person, issuing from the court which gave the decree; and when that can not be done, on account of the husband having left or fled from that jurisdiction to another, where the process of that court can not reach him, the wife, by her next friend, may sue him wherever he may be found, or where he shall have acquired a new domicile, for the purpose of recovering the alimony due to her, or to carry the decree into a judgment there with the same effect that it has

ARRINGTON *v.* ARRINGTON.

in the State in which the decree was given.    Alimony decreed
to a wife in a divorce of separation from bed and board is as
much a debt of record, until the decree has been recalled, as
any other judgment for money is."    21 How., 595.    This
doctrine has been expressly declared in several of our States.

In the cases cited, it appears that decrees for alimony due
and collectible *in futuro* by instalments annually are as effica-
cious and binding on the parties as if they were collectible as
soon as they are recorded.    From the authorities we have
examined, it seems to be assumed that either party, upon a
change of circumstances, may move in the court that made
the decree to have the decree modified or discharged, as may
seem proper in the opinion of that court.    In harmony with
the foregoing authorities are several cases in North Carolina.
*Irby v. Wilson,* 21 N. C., 578; *Davidson v. Sharpe,* 28 N. C.,
14; *Miller v. Leach,* 95 N. C., 229; *Walton v. Sugg,* 61
N. C., 98.    In these cases, the conclusive effect of the judg-
ment rendered in another State is recognized, holding that
the record, properly authenticated, is the highest and most
conclusive evidence.    In all cases where the defendant is
not served with legal notice, and not present in person or by
attorney, the original judgment in another State is a nullity.

2. As to the statute of limitations:    This, as we under-
stand the record, is the only question on which his Honor in-
timtaed an opinion.    The plea of the statute, in an action in
our State on a judgment obtained in another State, is a plea
to the remedy, and consequently the *lex fori* must prevail in
such an action.    *McElmoyle v. Cohen,* 13 Pet., 312.    That,
in North Carolina, is the 10-years statute.    Code, sec. 152.
The language is, "From the date of the rendition of said
judgment or decree."    That must refer to a judgment which
is at once due and collectible. It can not reasonably intend a
judgment which in terms is not due and collectable until a

future day, without presenting the absurdity of a statute barring or running against a judgment debt before the debt is due or collectable. We are of the opinion, therefore, that the annual sums adjudged in favor of the plaintiff which became due and collectible more than ten years before the institution of this action, are barred by The Code (section 152), and that those that became due within the ten years are not barred.

Error.

CLARK, J. (dissenting).    This is an action for $7,836, alleged to be due for arrearages of alimony upon a judgment rendered in an Illinois court, November, 1880, decreeing an absolute divorce, and the payment of $154 alimony annually, and $300 annually for support of the children awarded to the custody of the wife.    The laws of this State do not recognize alimony after the grant of an absolute divorce, and, in the nature of things, the children, or most of them, must long since have become of age.    Besides, by the universal law, that part of the judgment which is alimony and manitenance of the children, is subject to modification by the court at any time, and is therefore interlocutory, and not a final judgment, upon which alone an action can be brought in the court of another State.    In a very recent and well-considered opinion (*Lynde v. Lynde,* 162 N. Y., 405), the Court of Appeals of New York held, affirming 41 App. Div., 280, 58 N. Y., Supp. 567, that while a decree for alimony in a lump sum, or past alimony, is a final judgment, upon which an action can be brought in the courts of another State, a judgment for payment of alimony in the future is not such a judgment that action can be maintained upon it in the courts of another State.    The reasoning and the authorities cited in this case (162 N. Y., 418-420, and cases there cited) leave nothing to

be added.   For these reasons, it is clear that the complaint does not state facts to constitute a cause of action.

Without citing further authorities upon propositions which would seem self-evident, the Judge below followed the plain, unambiguous language of the statute, when he held the cause of action barred by the statute of limitations.   Code, sec. 152 (1) bars an action after ten years "upon a judgment or decree of any court of this State, or of the United States, or of any State or territory thereof, from the date of the rendition of the said judgment or decree."   The date of the rendition of the judgment in Illinois sued on is November 16, 1880, and the date of the summons in this action is March 27, 1899. This leaves no room for argument.   There is no exception in the statute as to judgments upon which executions are to issue at stated periods thereafter, nor as to decrees in divorce, or any other kinds of decrees.   The statute may be defective, in that it did not except some judgments from this limitation, or did not provide that, as to judgments framed like this, the statute should not run from the rendition of the judgment, but from the falling due of each payment.   But, as this Court once justly observed, through Judge Daniel, "We can not be wiser than the law."   The court has no legislative authority. It can not put into the statute words which the law-making power did not put there, nor amend it because we may think the General Assembly might have written the law differently if its attention had been called to this case, as to which our opinion might be at fault.   The language of the statute bars actions on all judgments after the lapse of ten years "from the date of the rendition of said judgment," not from the date of its performance.   The plaintiff could have sued on the judgment within ten years from its rendition, November 16, 1880, and, not having chosen to do so, she is barred by the statute from bringing this action, which is upon that judg-

ment. A State statute of limitations is a bar to an action in a State court upon a judgment rendered in a court of the United States, or of another State. *McElmoyle v. Cohen,* 13 Pet.,312; 13 Am. and Eng. Enc. Law (2d Ed.),1033, note 3. It is the statute of limitations of the State in which the action is brought which governs, and not that of the State in which the judgment sued on is rendered. *McElmoyle v. Cohen, supra;* 13 Am. and Eng. Enc. Law (2d Ed.), 1033, note 5; *Ambler v. Whipple,* 139 Ill., 311. The North Carolina statute contains no exception. It is too plain to be misunderstood by any one, and the Court has no power to correct or amend it, as if the act of the General Assembly were the action of a subordinate court.

DOUGLAS, J., concurs in the dissenting opinion.