## CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed November 15, 1916.

MARY F. WATSON
VS.
JOSEPH A. WATSON.

*R. B. Tippett and Son* for plaintiff.
*Julius H. Wyman* and *Jacob S. New* for defendant.
*Walter H. Buck, H. Elmer Singewald, Washington Bowie, Jr.,* and *Samuel Want* for garnishees.

BOND, J. —

The principal question raised here is whether attachments by way of execution may issue to enforce payment of fifteen years' arrears in instalments of alimony, or money for the support of a child, awarded in a decree passed in 1900. The objections urged are three. First, that Section 20 of Article 26 of the Code limits the issue of attachments on a decree to a period within twelve years from the date of the decree. This decree now passes that limitation by four years. Second, that as awards of alimony are subject to modification, and even revocation, the decrees are not such fixed, final decrees, and do not establish such debts of record, as are contemplated in the provision of this remedy of attachment for enforcement. Third, that irrespective of the availability of the remedy of attachment, irrespective of the time when it is resorted to, no such accumulation of arrears as is sought for here can be collected, for, following the practice of the Ecclesiastical Court, this Court should enforce payment of no more than the instalments which fall due during a brief period, such as a year, previously.

In the arguments it was assumed that payments ordered made to the wife for the support of the child of the marriage constituted alimony, or were to be treated as the same in law. And it seems to me to be correctly so assumed. The allowance is made to the wife, not to the child. And the fact that the particular use she shall make of the fund is designated, that she is to apply it to the support of the child as distinguished from her own support, affords no ground for a distinction in the classification or nature of the allowance, as I see it.

I cannot find any authority in Maryland which decides the questions raised here. Those questions have been argued, and it appears that they must be decided, as new ones in this State. The views of outside courts on the nature and effect of decrees for alimony are somewhat conflicting. And there seems to be a little confusion of ideas in some discussions, arising from efforts to fit to decrees for alimony in instalments rules and consequences which are appropriate only to decrees to be performed at once and involving mere private property rights. Courts of equity have within their jurisdiction a great variety of legitimate ends to be accomplished. Their decrees are means to those ends, and so will differ in their objects and purposes. And those objects and purposes, if they are to be accomplished, will entail corresponding differences in the effects of the decrees and in their enforcement. Decrees may legitimately require future performances as well as present performances; performances of merely private obligations or of obligations in which there is a public interest. And a decree of one sort is of the same legal force and value as a decree of any other sort. Yet statutes and decisions have commonly announced for decrees generally rules and consequences which fit only decrees for the present performance of purely private obligations, the most frequent form of decree.

Decrees for permanent alimony payable in future instalments unquestionably require future performances in which the public has an interest. Alimony is merely the social obligation of a man to support his wife and children translated into money. The obligation is put into new shape, appropriate to the separation of the married pair, and more conveniently enforceable. And, in addition, the court has by its decree undertaken enforcement. These purposes entail marked differences between the decree passed to accomplish them and decrees passed to give various kinds of private relief, and between the rules and consequences appropriate to the one and the other. The decree for alimony does not create a property right in the wife. She is not permitted to assign the right to receive any of the money. And on the other hand the decree for money payments does not transform the obligation into such a debt that a discharge of the husband in bankruptcy will free him from the burden of it; and this for the same reason that a discharge would not render a husband who is not divorced free to quit his family and make them public charges. (Wetmore vs. Markoe, 196 U. S. 68.) And so the constitutional inhibition against imprisonment for debt does not prevent a commitment for non-payment of alimony. (Phelps Jurid. Equity, Sec. 84; McCurley vs. McCurley, 60 Md. 189; 1 B. C. L. page 866, Sec. 4).

But these peculiarities of an alimony decree do not render it less forceful than any other order that a court of equity may pass. I do not believe that there can be, in the nature of any one final decree or another which the court may pass, ground for distinguishing in respect to enforceability by any appropriate remedy with which the court is equipped. The power of a court to modify such a decree does not affect its enforceability as it stands at any one time. (See note 4 Calif. Law. Review, 142-43). It is until changed, a final decree, in the correct meaning of that term. (Seton on Decrees, p. 1; Sistare vs. Sistare, 218 U. S. 1; Barber vs. Barber, 21 How. 582, 595; Van Ness vs. Bansom, 215 N. Y. 557; L. R. A. 1916 B 852). Certainly the availability of the remedy does not depend upon the classification of the wife's rights as a "debt of record." The court has ordered money paid, and it is to the order of the court that the remedy attaches.

Thus there seems to be no sufficient reason for denying the beneficiary under this particular form of decree the remedy of attachment by way of execution, unless there is some obstacle in the statute which give the remedy for equity proceedings. Courts elsewhere have generally held that the remedy is available to this as well as to any other form of decree.

McIlroy vs. McIlroy, 208 Mass. 458.

Taylor vs. Gladivin, 40 Mich. 232.

Hoffman vs. Hoffman, 55 Barbour, 269.

Wetmore vs. Wetmore, 149 N. Y. 520.

1 Ruling Case Law, "Alimony," Sec. 97, p. 951.

Section 190 of Article 16 of the Code is amply broad enough to include decrees for alimony and support. Section 29 of Article 9 and Section 20 of Article 26 are also broad in their terms and are to be considered upon this point. I conclude, then, that in Maryland payment of arrears in permanent alimony and support may be enforced by attachment, by way of execution. (McCurley vs. McCurley, 60 Md. 185.)

So much is without regard to any limitation either upon the wife's right to an accumulation of arrears of support or upon the time within which she may have the remedy of attachment. There are authorities which

hold that the wife should be limited in her recovery to arrears for a brief period only, the usual time being more or less arbitrarily fixed at a year. The reasoning which has led to this holding seems to be that as the whole object of the court is to provide the wife and children with support, and they have actually been supported in some way or other in these past years, the object has been accomplished and the collection of long overdue instalments would now be only for the purpose of the wife's enrichment; and that is not the purpose of the court's decree.

"The purpose is not to enrich the wife. The Ecclesiastical courts, indeed, would not ordinarily enforce arrears of alimony extending beyond a year."

Lynde vs. Lynde, 64 N. J. Eq. 736.

De Blaquiere vs. De Blaquiere, 3 Hagg. Ecc. 32.

"The practice of the divorce division so much treats the sum periodically payable under its orders as a fund for maintenance and not as property, and so much keeps its hands on the obligation to make these periodical payments for maintenance, that it is a searching rule that the court will not, in the absence of special circumstances, make an order enforcing more than one year's arrears."

Keer vs. Keer (1897) 2 I. B. 439; 66 L. J. I. B. 838.

Wilson vs. Wilson, 5 Eng. Ecc. 129n.

"Unless the husband is absent from the country, or some particular reasons are set forth."

Gresse vs. Gresse, 1 Phillim, 210.

"As this allowance is for the wife's maintenance from year to year, the court will not ordinarily compel payment beyond a year prior to the application, unless some explanation of the delay is made or appears. This is the rule in pin-money, which alimony in some way resembles."

2 Bishop on Marriage and Divorce, Sec. 1098.

This rule is rarely referred to in American courts, and in some, at least, it seems to have been disregarded. Adhering, as we do in Maryland, to the theories and principles of the Ecclesiastical Court, I think the courts of this State would place a somewhat similar limitation upon the amount collectible, where the facts would justify it. And such a rule would be one of additional practical importance because the right

to execution has its correlative lien which must be considered in ascertaining the title to real property; and the extent to which arrears in alimony are collectible will be the extent of a danger against which purchasers from a divorced husband must guard themselves.

If there is any limitation from this source, clearly the court must determine it upon the facts presented in each case. And that involves the furnishing of an opportunity for the parties to be heard. With us it is not familiar practice in any case to apply for an order for the writ of attachment; and such a preliminary step would often destroy the value of the writ. It would be appropriate for the wife to do so under Section 190 of Article 16 of the Code, especially when she seeks by the remedy more than would otherwise appear to be needed for her support or for that of her child, under the rule we are now discussing. But I do not see that this is essential to her right to attachment for whatever may be collectible under the decree. An application by the husband to limit the amount seems equally appropriate. In this case the motion to quash the whole attachment is used to make this application, and specific reasons for denying the wife the right to collect arrears are alleged. This I think improper. If the attachment should hold for any amount the motion must fail, whatever the opinion of the court on the amount of arrears collectible. The court should have an application upon which a decision of the point could be made.

Lastly, the flat limitation of the remedy of attachment to a period "within twelve years from the date of the judgment or decree" (Section 20 of Article 26 of the Code). This statute was originally framed to govern only judgments at law, and it stood so until the passage of the Act of 1884, Chapter 178. The amendment which then inserted the references to decrees in equity was obviously drafted either in forgetfulness of decrees for permanent alimony or else with an intention that such decrees should not be affected. The statute as amended not only denies the remedy of attachment to decrees after twelve years; it provides, too, that "the said judgment or decree may be *otherwise proceeded with* within twelve years from its date." So that

it places an equal limitation upon any proceeding on a decree. If we apply this to a decree for permanent alimony, payable in instalments, according to our usual practice, we produce results that approach too close to absurdity. The obligation of support is of such a nature that it cannot be limited in advance to any fixed period, or to any time short of the death or remarriage of the wife or the majority of children. And it could hardly be intended that a court of equity, after having been given jurisdiction over the obligation, should be limited to a provision for twelve years of support only, and so be prevented from following and enforcing it as long as it should continue naturally. In effect that would be to limit alimony to twelve years; unless it be held that the court must repeat its mandate and issue another decree for the subsequent period, which seems to be hardly a sensible requirement. Then, too, the limitation would run against instalments before they would become due. There would be, in effect, only one year's limitation upon the eleventh year instalment; and no sufficient time would be given for the enforcement of some of the later instalments. Again the statute provides the remedy of *scire facias* as the only means of avoiding the limitation imposed, yet that is a remedy appropriate only to a money judgment or decree which is merely private property, not to a decree for alimony which continues under the jurisdiction of the court of equity. All through the statute, indeed, the intention of the legislature to deal with judgments or decrees to be performed at once and in the nature of private property merely is apparent. And I conclude that it would be an imposition on the statute for the court to apply the limitation to the decree for alimony as of its date of entry. The court must use here the same reasonable discrimination which has led to the conclusion that constitutional and statutory inhibitions against imprisonment for debt or for the non-payment of "money decrees" (Code, Article 16, Section 190) have no application to the enforcement of compliance with decrees for alimony. (Phelps Jurid. Eq. Sec. 84; McCurley vs. McCurley, 60 Md. 189; 1 B. C. L. Sec. 4, page 866).

This is (in part, at least) the construction given to similar statutes of

limitation by the only authorities I have found on the point. In Ohio a statute which provided that a judgment upon which execution has not issued for five years shall become dormant and shall cease to operate as a lien on real estate was held inapplicable to a decree for alimony.

Lemert vs. Lemert, 71 Ohio St. 364.

In California, a statute which limited the right to execution to a period of five years from the date of entry has been held to run upon each instalment only from the date when it became due.

De Uprey vs. De Uprey, 23 Cal. 352; Gaston vs. Gaston, 114 Cal. 542.

And in North Carolina a statute which limited execution to ten years "from the date of the rendition of said judgment or decree," was held to have the same effect.

"It cannot reasonably intend a judgment which in terms is not due and collectible until a future day, without presenting the absurdity of a statute barring or running against a judgment debt before the debt is due and collectible."

Arlington vs. Arlington, 127 N. C. 190.

In the last case there was a dissent on the ground that the words of the statute did not permit of such a qualification. And there is, certainly, room for a strong argument that the North Carolina statute, and, more to our purpose, the Maryland statute, apply according to their plain words or not at all: that is, run from the date of the decree or do not apply to the particular decree at all. But this distinction may be of no importance in our present case, and I shall not undertake to decide it until we pass the point of deciding how much accumulated arrears the wife may properly claim, irrespective of any limitation, and then find it necessary to consider the instalments due more than twelve years ago. Sufficient to say now, I conclude that the statute does not put an end to the enforceability of this decree for whatever sum may be found due and collectible.

Accordingly the motion to quash the attachment will be overruled. Then the court will entertain a petition from the defendant to relieve him of the claim for all or any part of the instalments unpaid, or the court will entertain any petition on this point from the plaintiff.

Order to be signed accordingly.