Ruffin, Chief Justice,
 

 after stating the pleadings as above, proceeded as follows : — For the purpose of obtaining the opinion of the Court upon the principal points in controversy, the counsel, upon the supposition of the validity of the assignment under which the plaintiffs claim, have brought the cause on for hearing. The principal question and indeed almost the only one upon the matter of law, is
 
 *572
 
 upon the validity of the supposed marriage between the intestate Joshua Irby, and the defendant Mary H., mentioned in the pleadings. In reference to that the Court finds upon the proofs, that Alexander Jones and the defendant Mary H., then Mary H. Smith, both being inhabitants of South Carolina, and having their permanent domicil in that state, duly intermarried in South Carolina, according to the laws of that state, in the year 1804: that no divorce from the bonds of matrimony has ever been granted, declared or pronounced by any judicial sentence or legislative enactment in South Carolina; and that by the laws of that state, the contract of marriage is indissoluble, except by death: that Alexander Jones removed himself and his said wife from South Carolina, in the year 1809, to the state of Tennessee, and there they became
 
 bona fide
 
 and permanently domicilled: that the said Alexander continued to have his domicil and inhabi-tancy in Tennessee up to the time of his death, which happened in the year 1827; but that the said Mary H. in the year 1810,' separated from her said husband Alexander Jones, and removed to the County of Lincoln, in the state of North Carolina, and that her residence, inhabitancy and actual domicil, has ever since her said last removal up to this time, been in the said county of Lincoln. That there is probable reason to believe, that the said separation between the said Alexander and his said wife, was voluntary on the part of both, and that she removed to North Carolina by his consent; but the evidence of such consent on his part is not so clear, that the Court can declare that fact conclusively. The Court further finds, that the said intestate Joshua Irby, and the said Mary H. intermarried with each other in Lincoln county aforesaid, on the 5th of July in the year 1821, while the said Alexander Jones was in full life.
 

 Upon these facts, the law of this
 
 state
 
 is, that the second marriage of the defendant Mary H. was illegal and null, unless at the celebration thereof, the marriage before had between her and Alexander Jones, had been legally and effectually dissolved and annulled. As that is not admitted in the answers, the plaintiffs have insisted that it was
 
 *573
 
 so dissolved, by a judgment and sentence of a Court of the state of Tennessee, pronounced in a cause there duly constituted between the said Alexander as plaintiff, and his wife the said Mary H. as defendant; and in proof thereof have read in evidence, a duly certified copy of a statute of Tennessee, passed in the year 1799, entitled' “ an act concerning divorces ;” and also a duly certified transcript of a record of the Circuit Court for the county of Giles in Tennessee, wherein, upon the petition of said Alexander Jones against the said Mary H. Jones, that Court on the 11th day of April 1816, decreed and ordered, “ that the bonds of matrimony existing between the said Alexander Jones and the said Mary H. Jones be entirely dissolved and made void.”
 

 By the act of the legislature of Tennessee exhibited, it is enacted, amongst other things, that “ if either the husband or the wife shall be guilty of acts inconsistent with the matrimonial vow, by adultery, or wilful or malicious desertion, or absence without a reasonable cause for the space of two years, it shall be lawful for the innocent and injured party to obtain a divorce from the bonds of matrimony, by filing his or her petition against the other for that purpose, in a Superior Court.” The act further prescribes, as the method of proceeding therein, “ that process of subpoena shall issue and be served, either personally on the party defendant, or, if not to be found, by leaving a copy thereof at his or her usual place of abode; and if he or she neglect to appear, then an alias subpoena shall issue and be served as aforesaid; but if he or she cannot be found, then proclamation shall be made publicly by the sheriff on three several days at the Court-house, during term time, for the party to appear and answer, as commanded by the subpoena, and notice also be given in some newspaper in the state for four successive weeks previous to the return day of said process; and in the mean time the Court shall make preparatory orders in the cause, that the same may be brought to a hearing at the second term, when the Court may determine the same
 
 ex parte,
 
 if-necessary.”
 

 The transcript of the record of the divorce suit purports
 
 *574
 
 to be on the petition of the husband, Alexander Jones, filed on the 18th day of September, 1815, and setting forth ^ie marr‘age the parties in South Carolina; and that they soon lived unhappily : that the temper of the wife was turbulent beyond description, and her habits, both before and after marriage, were base and libidinous : that the petitioner continued to live with his wife five or six years, under the vain hope of reclaiming her : that about •five years previous to filing the petition, he became convinced of her continued lewd practices, and undertook to remonstrate with her; whereupon she declared, that she would act as she pleased ; and shortly afterwards, that is ■to say, five years before the suit, she left the bed and board of the petitioner without any just cause or provocation for so doing, and had not since returned, but on the contrary, is living in the state of North Carolina, in a state of concubinage. The prayer is for process of subpoena, and for such further order as may seem meet and proper.
 

 On the subpoena which then issued, the sheriff returned “ not foundand from the best information the defendant, Mary H. Jones, is 'not an inhabitant of this state.” Thereupon the record sets forth, that the petitioner appeared by his attorney, at October term, in 1815, and a proclamation was made on three several days of the same term, for the said Mary H. Jones to appear; but that she, although solemnly called, came not; whereupon the Court ordered notice to be given for four successive weeks, in a newspaper, that she should appear at the next term of the Court, and answer the petition; otherwise the Court would proceed to a hearing of the petition
 
 ex parte ;
 
 and the same was accordingly so set for hearing at the next term, after ordering an alias subpoena returnable to that term. At April term, 1816, the alias subpoena was returned “ not found: from information the said Mary H. Jones is an inhabitant of another state.” Thereupon the cause was heard
 
 ex parte,
 
 and without any appearance of Mary H. Jones, the defendant; and the decree before mentioned was pronounced.
 

 In the argument at the bar, which was ably conducted, many interesting questions were discussed upon the comity
 
 *575
 
 of nations and the conflict of laws. On the one side it was insisted, that the marriage between Jones and his wife could not be dissolved in Tennessee, if both of the parties had been domicilled there, upon the principles of the
 
 lex loci contractus,
 
 because it was indissoluble in South Carolina : that although the Courts of Tennessee might under her law be obliged to pronounce the decree, and after-wards give effect to it, yet that in South Carolina no effect could be given to it, both because it was against her policy, and because the law of Tennessee and the adjudication under it impaired the obligation of and violated the contract which was validly made in South Carolina: that this state, being a third party, must, upon this last principle, at least, refuse to execute the adjudication. To this, it was replied on the other side, that the Courts of this state could not look at the original nature of the contract, after the question of its absolute and permanent obligation, or of its being dissoluble, had passed into
 
 res judicata,
 
 before a tribunal of the country to which the parties were amenable at the time of the adjudication; and especially, under our law, when the adjudication was in a sister state.
 

 For the defendants it was again urged, that the Courts of North Carolina ought not to enforce this sentence, because it was in conflict with our own law upon the subject of divorce; and especially because it was granted against an inhabitant of North Carolina, for a cause on which divorce cannot be founded in this state, and contrary to sound policy, good morals, and the divine law. While on the other side, it is said, that the wife was not legally an inhabitant or citizen of this state, but was of Tennessee by virtue of her residence there when the offence was committed, and that being her husband’s permanent domicil: that our law allows, like that of Tennessee, proceedings in many instances against persons not brought before the Court by process and not appearing, and particularly, in our statute on this very subject of divorces : and that the wife having been once a resident of Tennessee, was amenable to the law of that state, for the offence there committed and could not evade that law, by changing, not her
 
 *576
 
 domicil and home but her abode : and that at all events all inquiry upon these and similar heads is excluded by the adjudication in Tennessee; which under the fifth section of the fourth article of the Constitution of the United States, and the act of Congress of the 26th of May 1790, is conclusive here, because it is conclusive in Tennessee. The defendants on the contrary, contend, that the record is not evidence at all, because the wife was not before the Court in Tennessee, and was not amenable to her laws, process and tribunals, being an inhabitant and citizen of this state.
 

 A judgment against a person who has liad no opportunity for defence, is not entitled to respect in the
 
 *577
 
 Courts of unless ii ®eai™*g ° country by 'vhos,e *lit>“nals waspro-nounced-
 

 
 *576
 
 Upon several of the questions discussed, the Court would not be unwilling to express the opinions to which our researches and reflection, aided by the argument, have led our minds; but we deem it neither needful nor proper, because upon most of them contrariant opinions have been delivered by eminent jurists in different countries, and also opposing adjudications made; and this cause, we think, may be disposed of entirely upon a single one of the points made. The Court is of opinion, that the decree of the Court of Tennessee is altogether inoperative and null, because it was not an adjudication
 
 between any parties;
 
 since the wife did not appear in the suit, nor was served with process, and was not a subject of Tennessee, but was a citizen and inhabitant of this state, and therefore, not subject to the jurisdiction of Tennessee, nor amenable to her tribunals.
 

 It lies at the foundation of justice, that every person who-is to be affected by an adjudication should have the opportunity of being heard in defence, both in repelling the allegations of fact, and upon the matter of law; and no sentence of any Court is entitled, intrinsically, to the least respect in any other Court, or elsewhere, when it has been, pronounced
 
 ex parte,
 
 and without opportunity of defence.. Generally, when the judgment is to be personal, the person-is made a party by the service of process of summons. But in some countries even that is insufficient; and the Court will not proceed to an adjudication, until appearance in Court and entered of record has been compelled by other process. But different countries have different regulations on this subject. If both the parties be subjects of
 
 *577
 
 the country of the forum, other countries have no right to complain of the municipal regulations by which judgment may be rendered for one of them against the other without defence; and perhaps, ought therefore not only to sustain in their Courts, when brought into litigation, what was done under the judgment in the country in which it was rendered, but also to aid in its execution, by considering it evidence of property, or of debt, or of right, when made the direct subject of an action, or of defence in the Courts of the other country. Upon that point, however,
 
 c
 
 and upon the extent of the obligation of such a judgment of a foreign forum, there is much diversity of opinion. Admitting nevertheless in this country such a judgment in one state between the citizens of that state to be con-elusive in all the others, it will not yet follow that the „ . , , . . ..... same effect is to be allowed to a judgment in like circumstances pronounced by a Court in favour of one of its own citizens, against an absent citizen of another state who did not appear, was not served with process, nor had any notice of the proceeding. The utmost extent to which the Courts of one country can be expected to go in execution of the judicial sentences of another country • , >iii , „ m such a case is, when both persons are the citizens of the state of the fórum. When the party to be charged belongs to a different state, and especially to that from which the execution of the sentence is asked, the answer must be given,
 
 “
 
 we cannot aid in such palpable disregard of right and violation of justice.” One state cannot send process into another; and it is a settled principle in most civilized nations, not to proceed in a cause in which the process by summons, even, has been made in another jurisdiction. If a person has been brought by force from one jurisdiction into another to be served in the latter with process, nations having regard to their own character, discharge the person, and refuse to proceed in the cause originated by such service of process. Much more, then, ought a Court to refrain from adjudicating against a person belonging to another government, actually resident therein, and to whom no notice appears to have been given. But it is said, that notice was, in the contemplation of the
 
 *578
 
 law of Tennessee, given by proclamation, suing out process, and advertisement in a newspaper. The regularity of the judicial proceedings in those respects is not questioned here. They cannot be; for it is supposed that every interlocutory adjudication stands on the same ground with the final one, and proves itself to be right. It is assumed, therefore, that the wife had the notice, as prescribed in the law of Tennessee; and that the Court of Giles was the proper Court, in reference to the jurisdiction of this subject, as between it and the other Courts of Tennessee, under her law. But the notice there deemed legal is not, in fact, notice; and the Courts of this state are not bound by the fiction imposed by Tennessee on her own Courts. The reason is,
 
 not
 
 that fault is
 
 to
 
 be
 
 found
 
 with the Courts of Tennessee, but with the law of Tennessee. That state has no power to enact laws to operate upon things or persons not within her territory; and if she does, although her domestic tribunals may be bound by them, those of other countries are not obliged to observe them, and are not at liberty to enforce them. The laws of one country have no direct extra-territorial efficacy. The wife, Mary H. Jones, was not bound to appear in a Court in Tennessee ; nor is she concluded by the sentence in a cause to which she was not a party. That is the principle which controls the opinion of this Court. There can be no valid adjudication, unless there be a thing or persons before the Court. Without that, what purports to be an adjudication is a perfect nullity, and binds one person no more than it does another. If a person be named in the proceedings as the person who is to be made a party, but in fact is not made a party, and the record itself shows that it is the same thing as if he were not named; for the law regards substance, not shadows, and has respect to realities, and not the mere names of things or persons.
 

 
 *577
 
 But when antwasth¿ subject of another country, suchajudg-extra-tern-^¿¡¡^n° although ®ecUccord-to the
 
 lex loci.
 

 
 *578
 
 The Con-stitnlion of the United States, in providing that full faith and credit shall
 
 *579
 
 be given to proceed-01*1 ings of one courts of another,intended only to render rec°rd oi u suit
 
 inter partes
 
 to ana-’ ble a state jurisdi™6 tion of per. „uther ^n^ies’ pense with the service of process.
 

 
 *578
 
 In the opinion of the Court, the Constitution of the United States and the act of Congress do not make it more imperative on the Courts of one state, than it was before, to recognize and enforce the judicial sentences of another state against persons who were not parties to the proceed
 
 *579
 
 ings, and before the Court. Those provisions were made, as we think, for other purposes, and not with the view of enlarging the jurisdiction of the several states, either in regard to persons or things out of them. At the time of the American Revolution, it was the doctrine of the English Courts of common law, that foreign judgments however regular, and although rendered between persons within the jurisdiction, and after full defence, were, if • T-, i i . • , i sued on in England, re-examinable upon the merits, both as to the fact and the law. That doctrine was deduced . from the technical reason, that a foreign judgment was not a record; and, therefore, was not conclusive as record evidence. It was very important in this country, that such a principle should not be incorporated into our law ; as the connexion between the colonies, though strictly speaking, foreign to each other, was very intimate by commercial intercourse, and migration from one state to another, under a common sovereign, was lawful and frequent. The evil would be great, if, after a course of litigation in one colony, the aggrieved party should be compelled to go through the whole again, simply by the removal of the other into an adjacent territory. It was to meet that grievance that the very salutary provision was inserted in the Constitution, as it seems to us; for it is well known, that the decisions of the English Courts, were at that time, not only received as at this day, with great respect in this country, but were cited and relied on as authoritative on the Courts of America. The purpose was, to make, what was then deemed presumptive or
 
 •prima facie
 
 evidence of right, that might be re-examined, conclusive record evidence, and nothing more. The words do, indeed, take in all judicial proceedings in other states. But constitutions are necessarily expressed in short sentences, and comprehensive terms; and, like other works of man, must, from the acknowledged difficulty of attaining perfect precision of language, be construed according to the nature of the subject, and the indispensable necessity of exceptions by implication. Take, for example, that provision of the Constitution which forbids a state to pass any law impairing the obligation of contracts. It is, of
 
 *580
 
 necessity construed to mean, impairing a contract once valid, according to the law of the state which dissolves or impairs its obligation. It is seen at once, that it did not, according to its words, mean that every thing in the form or garb of a contract should be enforced, notwithstanding the state denied the parties to it the capacity to make a contract, or enacted that, if made, it should be void, because it was from its consideration or object, against good morals or public policy. The very divorce in question, can be deemed effectual only by a liberal relaxation of the words of that clause. The article under considetion, is subject, we think, to the like restriction. It .was intended to restain one state from disregarding the judicial sentences rendered in another
 
 between parties
 
 or
 
 on things
 
 within it. It is not an enabling provision, under which one state might pass laws directly embracing persons or things throughout the Union. Congress alone can do that, upon the matters committed to the general government. If the state cannot, by law, directly reach persons or things out of her territory, she cannot do so through the intervention of her Courts; for the power of the Court is derived from the law of the state, and cannot extend to places, persons or things, not under the control or power of the law-maker. Such an extension of the power of a state, or a state Court, was not in the ^contemplation of the convention. It is unnecessary, “unjust, and dangerous; and cannot be admitted, when it lis so obvious that the general words were used
 
 diverso intuitu.
 

 'The laws •of this state giving jurisdiction in cases of attachment and non-resident defendants in equity, and for divorces, are objectionable, except when they merely au
 
 *581
 
 thorize the condemna-tlOXl Pr0‘ perty at-°r with the makinga°f non-resi-‡”1 a par’
 

 
 *580
 
 It has been, however observed, in the course of the argument, that the Courts of North Carolina cannot object to this jurisdiction; for our own laws assume it in cases of attachment, non-resident defendants in equity and in divorce suits, and other cases. To some extent it is justifiable ; as it is in the nature of merely dispensing with a party, because he is out of the jurisdiction, and giving relief against those who are within it. For although a decree is pronounced against the absent person, yet the statute allows him time to show cause against it, and upon his motion, it opens the decree. But it is acknowledged,
 
 *581
 
 that in so far as the judgment in attachment against foreigners is personal, that it goes beyond the thing attached, and in divorce cases, where the defendant is out of the state, our laws are obnoxious to the same criticism and objection, which is made to that of Tennessee. But J 1111* Ml that is no reason why we should be insensible to the injustice that may be done under either code; or why this Court should not act under what is deemed to be the true construction of the federal Constitution. Although we may be obliged, as a domestic tribunal, to give personal judgment in attachment, or respect that given by other Courts of this state, we are not, for the like, or for any reason, to enforce against a person here a judgment of another state, to which that person was no party. Nor can we expect the Courts of our sister states, to act with more comity to us.
 

 But this a reason merrtob5" tained flaws'in" ofter states enforced bere'
 

 Thedomi-that of the-gome pur. poses, as for her'claim' todistrlbu*
 
 *582
 
 tion of his estate in case ofin-testacy. But where husband and wife have adversary interests, in a suit between them, her domicil is where she actually resides.
 

 
 *581
 
 There remains to be disposed of, the position of the counsel for the plaintiffs, that Mrs. Jones’s domicil was in Tennessee, and that, therefore, she was amenable to the law of that state. The Court entertains a different opinion. There is nothing in the doctrine of allegiance* to prevent ,her domicil being in this state. We suppose every citizen of the United States free to, remove from, or into, any and each of the states. If not, in this case, the allegiance of both parties was due to South Carolina, where they were born, and not to Tennessee. Admitting, then* that the parties acquired a domicil and citizenship,, .in Tennessee, by remaining and settling there; by the same means, she gained a domicil, home and. citizenship in this-state, by removing and living within the state continually, and in a state of separation from her husband, for nearly six years prior to the institution of these proceedings in. Tennessee. She was effectually severed from Tennessee thereby, as we think. It may be true that for some purposes, the matrimonial domicil of this female would be deemed Tennessee; as, for instance, to determine her distributive share of his personal estate, in case of his intestacy. But for the purposes of jurisdiction over her person, and especially in a suit between her husband and herself, she was not domiciliad in Tennessee. The aphorism, that the
 
 *582
 
 husband and wife are but one person, has been alluded
 
 to
 
 as founding the argument that his domicil is necessarily hers. That is merely a positive institution of the common law of England, and may not be the law of Tennessee j upon which we have no evidence. But it is a mere fiction, which is never allowed, even in the common law, to obscure, much less defeat justice. They are two persons to make a marriage contract. They must also, necessarily, be two persons to litigate between themselves upon any subject, and above all, upon the obligation, continuance, or dissolution of that contract. They are not, therefore, so identified, that they cannot have opposing interests, that they cannot have separate existences and separate residences and homes. If the argument of the counsel were well founded, if would prove that the husband might sue his wife for a divorce, enter her appearance, and in her name, confess his own allegations. One ground for a divorce in the law of Tennessee is,
 
 absence
 
 of the wife
 
 for two years,
 
 a length of time showing the change of home ; and the gravamen of the petition, — it may be called so, because it is the only specific allegation of any
 
 fact
 
 against her, — is, that the wife “ left the bed and board of the plaintiff five or six years before, and had not since returned, but was
 
 living
 
 in North Carolina.” In the opinion of the Court, the domicil of the wife was separate from that of her husband, and was permanently fixed in North Carolina, as her home.
 

 Such being the state of facts, the Court entertains no doubt, that the sentence of divorce rendered in Tennessee is a mere nullity; because Mary H. Jones, the person against whom the sentence was pronounced, was not a party to the proceeding in which the sentence was given and, no suit was properly thereby constituted; and if, as a citizen and inhabitant of Tennessee, she would have been bound by that judgment or decree, yet that she is not so bound, because at the time of making the decree and of instituting the petition by Alexander Jones, and for more than five years previous, she was not within the jurisdiction of Tennessee, but was an inhabitant and citizen of North Carolina.
 

 
 *583
 
 The effect of this opinion in the cause is, that the marriage of Joshua Irby with Mary H. Jones was void; and that he, therefore, did not acquire thereby any property that was hers.
 

 Per Curiam. Decree accordingly.