STATE v. O. B. WILLIAMS AND LILLIE SHAVER HENDRIX.

(Filed 10 December, 1941.)

1. **Bigamy § 1—**

   At common law and under statute, Michie's N. C. Code, 4342, bigamy is an offense against society rather than against the lawful spouse of the offender.

2. **Criminal Law § 81c—**

   An exception to the admission of certain testimony cannot be sustained when testimony of the same import is thereafter or theretofore admitted without objection.

3. **Bigamy § 2—**

   Under the provisions of Michie's N. C. Code, 4342, a defendant may be prosecuted for bigamy in the county in which he is apprehended, and it is not required that the prosecution be instituted in the county in which the bigamous cohabitation takes place.

4. **Divorce § 19: Constitutional Law § 23—**

   A divorce obtained in another state against a resident of this State upon service by publication, without personal appearance, does not come within the protection of the full faith and credit clause of the Federal Constitution. Art. IV, sec. 1.

**5. Same—**

A divorce obtained in another state against a resident of this State upon personal service in this State of process issued by the court of such other state, without personal appearance, does not come within the protection of the full faith and credit clause of the Federal Constitution. Art. IV, sec. 1.

**6. Bigamy § 2—**

In this prosecution of defendants for bigamy the court's statement of the contentions of the State that defendants cohabited here as man and wife, that each had a living spouse in this State at the time of their purported second marriage in another state, that each obtained a decree of divorce in such state based upon substituted service, and went to such other state not to establish a *bona fide* residence but to take advantage of the laws of that state and obtain a divorce through fraud upon its court, and that neither of the divorce decrees were valid, *is held* without error.

**7. Appearance § 2a—**

In an action instituted in a court of another state, a promise of the resident defendant written on a post card mailed to plaintiff's attorney that defendant would sign "original appearance" upon "receipt" does not constitute a general appearance.

**8. Process § 4—**

Personal service by the sheriff of a county of this State of process issued by a court of another state is a nullity and void.

**9. Bigamy § 2—**

Defendants, each having a spouse living in this State, went to Nevada, where each obtained a decree of divorce based upon constructive service, and immediately after obtaining the decrees, married and returned to this State and cohabited as man and wife. *Held:* Defendants' belief that their respective divorce decrees were valid and would be recognized in North Carolina is no defense to a prosecution for bigamy. Michie's N. C. Code, 4342.

**10. Bigamy § 2: Divorce § 19—Our courts will not recognize decrees of divorce rendered by court of another state upon constructive service.**

Defendants, each having spouses living in this State, went to Nevada and after residing there for a period of six weeks instituted divorce actions against their respective spouses, employing the same attorney, who, as a notary public, took verification of the complaints and the affidavits of residence in that state, and the affidavits of service of process in the divorce actions by publication. The decrees of divorce, based upon constructive service, were rendered upon the finding by the court, without the aid of a jury, of the existence of facts entitling defendants to absolute divorce under its laws. Immediately after the rendition of the divorce decrees, defendants married in that state and then returned to this State and cohabited here as man and wife. *Held:* Our courts do not recognize the validity of the divorce decrees, and such decrees are not a defense to a prosecution of defendants for bigamy.

BARNHILL, J., concurring.

STACY, C. J., and WINBORNE, J., join in concurring opinion.

APPEAL by defendants from *Sink, J.*, and a jury, at February-March Term, 1941, of CALDWELL. No error.

The following bill of indictment was sent to the grand jury, who returned a true bill:

"The jurors of the State, upon their oath, present: That O. B. Williams and Lillie Shaver Hendrix, late of the County of Caldwell, on the 4th day of October, in the year of our Lord One Thousand Nine Hundred and Forty, with force and arms, at and in the county aforesaid, unlawfully, wilfully and feloniously did get married to each other in the City of Las Vegas in the State of Nevada, and thereafter returned to the State of North Carolina and did live together and cohabit together in the said State of North Carolina and in Caldwell County, the said O. B. Williams having a living wife, one Mrs. O. B. Williams, living in Caldwell County, North Carolina, at the time of his said marriage to Lillie Shaver Hendrix and the said Lillie Shaver Hendrix having a living husband, one Tom Hendrix, living in Caldwell County, North Carolina, at the time of her marriage to the said O. B. Williams, against the form of the statute in such case made and provided and against the peace and dignity of the State. L. S. Spurling, Solicitor. Returned a True Bill, A. S. Nelson, Foreman Grand Jury."

The defendants entered a plea of "Not guilty." Upon the trial the jury returned the verdict: "Upon their oaths, say that said O. B. Williams and Lillie Shaver Hendrix are guilty as charged in the Bill of Indictment."

*The State's evidence:* Mrs. Carrie Williams (Mrs. O. B. Williams) testified: "That she was a Wyke before her marriage; that she now lives about four miles east of Granite Falls, Caldwell County, North Carolina; that she married O. B. Williams on May 30, 1916, in Caldwell County; that she and Williams lived together as husband and wife between 23 and 24 years, or until about May 7, 1940; that they had reared a family of four children; that they had not lived together since May 7, 1940; that she had not brought any action for divorce against O. B. Williams." Cross-examination: "I happen to have a paper that the Sheriff served on me here. I read it."

Tom (Thos. George) Hendrix testified: "I live in this county. I was married to Lillie Shaver Hendrix about twenty years ago. We lived as husband and wife at Saw Mills in this county until May, 1940. We have not lived together since that time. I have brought no divorce proceedings against my wife." Cross-examination: Witness admits his signature on a card. The card is as follows: Address side: "I. S. Thompson, Attorney-at-Law Rooms 5 & 6 Griffith Bldg., Las Vegas, Nevada." Reverse side: "Dear Sir: Upon receipt of the original appearance, I will sign same. (signed) Thomas Hendrix."

The State introduced a Certificate of Marriage, by the county recorder, David Farnsworth, dated 8 October, 1940, between the defendants in Clark County, Nevada: "State of Nevada, County of Clark, ss. This is to Certify That the undersigned, C. H. Sloan, did, on the 4th day of October, A.D. 1940, join in lawful wedlock O. B. Williams of Las Vegas, State of Nevada, and Lillie Esther Shaver of Las Vegas, State of Nevada, with their mutual consent in the presence of Mrs. Jack Pembroke and Mrs. Charles H. Sloan, who were witnesses. C. H. Sloan, Baptist Minister. Mrs. Jack Pembroke, Mrs. Charles H. Sloan, witnesses. Recorded at the request of C. H. Sloan. Filed Oct. 8, 1940. David Farnsworth, County Recorder." This was duly authenticated.

I. M. Vance, witness for the State, testified, in part: "I have seen Mr. Williams and Mrs. Hendrix there at their home. . . . I have seen them together about eight months. I couldn't say that they cook and eat at their home. They live there."

T. A. Thompson testified, in part: "I live in Pineola, Avery County. I know Mr. Williams and have known him since some time in February. I met them in Pineola Baptist Church. Q. Do you know whether they are living together and have been living together for some time in Pineola as husband and wife? Ans.: Yes. Q. Have they? Ans.: Yes. To the best of my knowledge they have lived together since about August or September, I wouldn't say exactly."

R. G. Buchanan testified, in part: "I live in Pineola, Avery County. I know the two defendants, Mr. Williams and the woman, and have known them for about eight months. They live in Pineola as man and wife. (Cross-examination.) I have known them something like six or eight months. I have been to their home twice. I have known their general reputation since they have been in the community, and it is good."

The State rested. Motion by defendants for judgment of nonsuit. Motion overruled. Exception by defendants.

*Defendants' evidence:* Exemplified copy of the divorce proceedings from the Eighth Judicial District of the Court of the State of Nevada in and for Clark County in an action entitled "Lillie Esther Hendrix *v.* Thomas George Hendrix." The complaint alleges:

"The plaintiff complains of the defendant and for cause of action alleges:

"I. That on June 27th, 1920, in Icard, State of North Carolina, the plaintiff and the defendant intermarried and ever since have been and are now wife and husband.

"II. That plaintiff is now and has been a resident of the State of Nevada for a period of more than six weeks immediately preceding the commencement of this action; she has been and now is, a resident of the County of Clark, State of Nevada.

"III. That there is no issue of said marriage.

"IV. That the defendant has willfully neglected for the period of over one year immediately preceding the commencement of this action to provide plaintiff with the common necessities of life, although having the ability to do so; that such neglect was and is not the result of poverty on the part of the defendant, which he could not avoid by ordinary industry.

"For a second and separate cause of action against the defendant, plaintiff alleges:

"V. That the allegations set forth in paragraphs I, II and III, of plaintiff's first cause of action are true and are hereby made a part of this cause of action.

"VI. That during the term of said marriage, the defendant has been guilty of extreme mental cruelty toward this plaintiff by his words, actions and conduct; and plaintiff therefore alleges, that during the term of said married life the defendant has been guilty of extreme cruelty toward the plaintiff.

"Wherefore, plaintiff prays judgment against the defendant dissolving the bonds of matrimony now existing between the plaintiff and the defendant, and restoring said parties to the status of single persons. I. S. Thompson, Attorney for plaintiff." Subscribed and sworn to before I. S. Thompson, Notary Public, seal attached on 26 June, 1940.

"In the Eighth Judicial District Court of the State of Nevada in and for Clark County. No. 10651. Lillie Esther Hendrix, plaintiff, *vs.* Thomas George Hendrix, defendant—Affidavit for Publication of Summons. Filed July 22, 1940. Lloyd S. Payne, Clerk, By Helen Scott, Deputy." The affidavit, among other things, says: "That the defendant, Thomas George Hendrix, resides outside the State of Nevada, to-wit, at 391 Fuller Street, Akron, Ohio, and that he is not now and cannot be found in the State of Nevada and that defendant's present place of residence is 391 Fuller Street, Akron, Ohio." Subscribed and sworn to before I. S. Thompson, Notary Public, seal attached 20 July, 1940.

"In the Eighth Judicial District Court of the State of Nevada in and for Clark County. No. 10651. Lillie Esther Hendrix, plaintiff, *vs.* Thomas George Hendrix, defendant—Order Directing Publication of Summons. Filed July 22, 1940. Lloyd S. Payne, Clerk, by Helen Scott, Deputy Clerk." Then is set forth the Order, signed by Roger Foley, District Judge—Summons be by publication: "On motion of I. S. Thompson, attorney for plaintiff, it is ordered that the service of the summons in this action be made upon the defendant, Thomas George Hendrix, by publication thereof in the Las Vegas Evening Review Journal, a newspaper published in the City of Las Vegas, County of Clark, State of Nevada, hereby designated as the newspaper most likely to give

notice to said defendant; that said publication be made for a period of four weeks and at least once a week during said time. And it further in like manner satisfactorily appearing to me that the residence of said defendant is known as 391 Fuller Street, Akron, Ohio, and that his post office address is 391 Fuller Street, Akron, Ohio; it is ordered and directed that a copy of the summons and complaint in this suit be deposited in the United States Post Office at the City of Las Vegas, County of Clark, State of Nevada, postpaid, directed to said defendant at his said post office address. Dated this 22 day of July, 1940."

"In the Eighth Judicial District Court of the State of Nevada in and for Clark County. Lillie Esther Hendrix, plaintiff, *vs.* Thomas George Hendrix, defendant—Summons." Then is set forth the summons, duly signed, dated 26 June, 1940. "Returned and filed October 4, 1940. Lloyd S. Payne, Clerk, Dolores Yturri, Deputy. I. S. Thompson, Attorney for Plaintiff, Rooms 5 & 6 Griffith Bldg., Las Vegas, Nevada— 13-1575. Sheriff's Return. Received at Sheriff's Office, Summit County, July 24th, 9:19 A.M., 1940." "Affidavit of Mailing Copy of Summons and Complaint—Filed Oct. 4, 1940. Lloyd S. Payne, Clerk. By Dolores Yturri, Deputy."

Affidavit made by George W. Thompson (same last name as the attorney), setting forth the publication and the mailing of the copy of Summons and Complaint, to Akron, Ohio. "Subscribed and sworn to before me, this 10th day of August, 1940. I. S. Thompson, Notary Public. (Attorney in the case.)"

Affidavit of foreman of newspaper: "That the attached was continuously published in said newspaper for a period of five weeks from August 7, 1940, to Sept. 4th, 1940, inclusive, being the issues of said newspaper was regularly issued and circulated on each of the dates above named."

"In the Eighth Judicial District Court of the State of Nevada in and for the County of Clark. No. 10651—Lillie Esther Hendrix, plaintiff, *vs.* Thomas George Hendrix, defendant. Decree of Divorce. Filed October 4, 1940. Lloyd S. Payne, Clerk, by Helen Scott, Deputy.

"The above entitled cause coming on regularly for hearing this day, in open Court, before the Honorable Roger Foley, Judge of said Court, presiding; Present Lillie Esther Hendrix, plaintiff, in person and by her attorney, I. S. Thompson, the defendant not appearing and the Court having before it all the files, pleadings and papers in the action and being fully advised in the premises, finds that this action has been regularly commenced; and that the plaintiff is now and has been a *bona fide* resident of the County of Clark, State of Nevada for more than six weeks immediately preceding the commencement of this action; that the defendant has been duly and regularly served with summons in this

action in the manner prescribed by law and the order of this Court; that after the order was made directing the publication of the summons, the plaintiff used every effort to locate the defendant in order to serve the summons upon him personally but was unable to do so because of his dodging service; that the service of summons was made by publication in The Las Vegas Evening Review Journal, for a period of four weeks and at least once a week during said time; and the default of the defendant has been duly entered for failure to answer plaintiff's complaint within the time allowed by law; and the defendant not having appeared for trial of said action either in person or by attorney and that the Court has complete jurisdiction of the matter both as to the subject matter and the parties to the action. Now, Therefore, after hearing the witnesses sworn and examined in open Court and the said cause having been submitted and the Court being fully advised in the premises and having fully considered all the evidence in the case, finds that all the averments contained in plaintiff's complaint are true as therein alleged; that the plaintiff, Lillie Esther Hendrix, is without fault in the premises, and is entitled to a Decree of Divorce from the defendant, Thomas George Hendrix, on the grounds of his willful neglect and extreme cruelty toward the plaintiff. It is, Therefore, Ordered, Adjudged and Decreed that a contract of marriage now existing between the plaintiff, Lillie Esther Hendrix, and the defendant, Thomas George Hendrix, be and the same is hereby dissolved, set aside and forever held at naught; and that the said parties are absolutely divorced and released from any and all marital obligations each to the other, and are hereby restored to the status of single persons. Done in open Court, this 4th day of October, 1940. Roger Foley, Dist. Judge."

Then comes the Judgment Roll. Then the "Praecipe for Default," signed by I. S. Thompson, attorney for plaintiff. Then the "Default Judgment": "Witness my hand and seal of said Court, this 4th day of October, A.D. 1940. Lloyd S. Payne, Clerk, by Dolores Yturri, Dtp. Clerk. Seal."

Affidavit as to residence of plaintiff, in part: "That on said last named date Lillie Esther Hendrix, the plaintiff above named, came there to live, rented a room and is still living there; that said Lillie Esther Hendrix was present every day, at said place, from the date she came there, May 15, 1940, up to and including June 26, 1940. Lillie Roesselet. Subscribed to and sworn before me, this 16th day of September, 1940. I. S. Thompson, Notary Public. Seal. Filed October 4, 1940. Lloyd S. Payne, Clerk, by Helen Scott, Deputy."

Affidavit of plaintiff "Of non military service of defendant—filed Oct. 4, 1940, signed Lillie Esther Hendrix. Subscribed and sworn to before me, this 1st day of October, 1940. I. S. Thompson, Notary Public—Seal."

Then comes the testimony of plaintiff before Roger Foley, District Judge, confirming what she had sworn to in her Complaint and as to her residence. "Q. Where do you reside? Ans.: Las Vegas, Nevada. Q. Las Vegas, Clark County, Nevada? Ans.: Yes. Q. You filed your complaint on June 26, 1940; had you resided here a full six weeks prior to that time? Ans.: Yes. Q. When did you come to Clark County, Nevada? Ans.: May 15, 1940."

O. B. Williams was called as a witness for plaintiff: (By Mr. Thompson) "Q. Where were you living on the 15th day of May, 1940? Ans.: At the Alamo Court, Las Vegas. Q. When did you first see her at that Court? Ans.: May 15, 1940. Q. So that she lived there at that Alamo Court until the day she filed her complaint? Ans.: Yes, sir. Q. You saw her every day? Ans.: Yes, sir."

*Defendants' Exhibit No. 2.* (Exemplified copy of the divorce proceedings in the Eighth Judicial District Court of the State of Nevada, in and for Clark County, and that certain action entitled: Otis Baxter Williams *v.* Carrie Ora Williams): "In the Eighth Judicial District Court of the State of Nevada in and for Clark County. No. 10650. Otis Baxter Williams, plaintiff, *vs.* Carrie Ora Williams, defendant. Complaint. Filed June 26, 1940. Lloyd S. Payne, Clerk, by Tilla Cronick, Deputy. The plaintiff complains of the defendant and for cause of action alleges:

"1. That in the month of November, 1916, in Granite Falls, State of North Carolina, the plaintiff and the defendant intermarried and ever since have been, and are now, husband and wife.

"2. That the plaintiff is now and has been a resident of the State of Nevada for the period of more than six weeks immediately preceding the commencement of this action.

"That for more than six weeks immediately preceding the commencement of this action he has been, and is now, a resident of the County of Clark, State of Nevada.

"3. That during the term of said marriage the defendant has been guilty of extreme cruelty toward this plaintiff, by her words, actions and conduct;

"And plaintiff, therefore, alleges that during the term of said married life the defendant has been guilty of extreme cruelty toward this plaintiff.

"Wherefore, plaintiff prays judgment against the defendant dissolving the bonds of matrimony now existing between the plaintiff and the defendant, and restoring said parties to the status of single persons. I. S. Thompson, Attorney for plaintiff." Subscribed and sworn to before I. S. Thompson, Notary Public, 26 June, 1940.

Then follows: (a) Affidavit for Publication of Summons, filed 18 July, 1940, subscribed and sworn to 16 July, 1940, before I. S. Thomp-

son, Notary Public, seal attached; (b) Order Directing Publication, signed by Roger Foley, District Judge, dated 18 July, 1940; (c) Summons, dated 26 June, 1940; (d) Affidavit of Sheriff.

"Sheriff's Return: State of Nevada, County of Clark—ss. I, J. F. Parlier, the duly elected, qualified and acting Sheriff of said County and State, (error) do hereby certify and return that I received the within summons on the 18th day of July, A.D., 1940, and that I personally served the same upon the within named defendant, Mrs. O. B. Williams, on the 22nd day of July, A.D., 1940, at Granite Falls, County of Caldwell, North Carolina, by then and there delivering to her, the said defendant, personally a copy of said summons attached to a certified copy of the complaint in the within entitled action. Dated this 22nd day of July, A.D., 1940. J. F. Parlier, Sheriff Caldwell County, State of North Carolina." Certificate as to being sheriff, by clerk Superior Court of Caldwell County, N. C.

(e) Decree of Divorce, signed by Roger Foley, District Judge, 26 August, 1940; (f) then comes Judgment Roll; (g) Praecipe for Default; (h) Default, and certain certificates. Defendants rest.

At the close of all the evidence the defendants and each of them renewed their motion for judgment as of nonsuit. Motion overruled as to each defendant, and the defendants and each of them excepted.

The judgment of the court below is as follows: "Upon the verdict as rendered by the jury, the judgment of the court as to the male defendant, O. B. Williams, is that the said male defendant be confined in the State Prison at Raleigh, North Carolina, for not less than three nor more than ten years, and be assigned to hard labor as provided by law. As to the female defendant, Lillie Shaver Hendrix, the judgment of the court is that she be confined in the State Prison at Raleigh, North Carolina, for not less than three nor more than five years and assigned to perform such labor as provided for women prisoners by law."

Upon the coming in of the verdict the defendants and each of them, in apt time, moved that the court set the verdict aside as being against the greater weight of the evidence and the law in the case, and for errors assigned and to be assigned. Motion denied in each case as to each defendant, and the defendants and each of them excepted, and assigned error. To the judgment of the court defendants and each of them excepted, assigned error and appealed to the Supreme Court. The defendants made other exceptions and assignments of error and appealed to the Supreme Court. The material ones will be set forth in the opinion.

The record of exemplification introduced by defendants is not set forth in proper order; therefore the facts, as we have set them forth, follow the order of the exemplification.

*Attorney-General McMullan* and *Assistant Attorneys-General Bruton and Patton* for the State.
*Pritchett & Strickland* and *George Hovey* for defendants.

CLARKSON, J. At the close of the State's evidence, and at the conclusion of all the evidence, the defendants made motion in the court below for judgment of nonsuit. N. C. Code, 1939 (Michie), sec. 4643. The court below overruled these motions and in this we can see no error.

The defendants are indicted under N. C. Code, *supra,* sec. 4342, which is as follows: "If any person being married shall marry any other person during the life of the former husband or wife, every such offender, and every person counseling, aiding or abetting such offender, shall be guilty of a felony, and shall be imprisoned in the State's Prison or county jail for any term not less than four months nor more than ten years. Any such offense may be dealt with, tried, determined and punished in the county where the offender shall be apprehended, or be in custody, as if the offense had been actually committed in that county. If any person, being married, shall contract a marriage with any other person outside of this State, which marriage would be punishable as bigamous if contracted within this State, and shall thereafter cohabit with such person in this State, he shall be guilty of a felony and shall be punished as in cases of bigamy. Nothing contained in this section shall extend to any person marrying a second time, whose husband or wife shall have been continually absent from such person for the space of seven years then last past; and shall not have been known by such person to have been living within that time; nor to any person who at the time of said second marriage shall have been lawfully divorced from the bond of the first marriage; nor to any person whose former marriage shall have been declared void by the sentence of any court of competent jurisdiction."

At common law, the second marriage was always void and from the earliest history of England polygamy has been treated as an offense against society. It is considered as a crime against the marital relation rather than against the wife. Bigamy and polygamy are likewise crimes by the laws of all civilized and Christian countries.

*Mr. Justice Waite* said: "From that day (the date of the enactment of the bigamy statute in Virginia, 12 Hening's Stat. 691), to this we think it may safely be said there never has been a time in any State of the Union when polygamy has not been an offense against society, cognizable by the civil courts and punishable with more or less severity." *Reynolds v. United States,* 98 U. S., 145 (165), 25 L. Ed., 244.

The defendants' exception and assignment of error to the following question and answer, elicited from the State's witness, T. A. Thompson,

cannot be sustained: "Q. Do you know whether they are living together and have been living together for some time in Pineola as husband and wife? Ans.: Yes. Q. Have they? Ans.: Yes."

R. G. Buchanan, a witness for the State, later testified: "I live in Pineola, Avery County. I know the two defendants, Mr. Williams and the woman, and have known them for about eight months. They live in Pineola as man and wife. (Cross-examination.) I have known them something like six or eight months. I have been to their home twice. I have known their general reputation since they have been in the community, and it is good." There was no exception or assignment of error made by defendants to this later testimony. In fact, the defendants cross-examined the witness. This evidence was plenary to be submitted to the jury under the bill of indictment that defendants were living together in Avery County, North Carolina, as man and wife. They were tried in Caldwell County, North Carolina, but the statute, sec. 4342, *supra,* permits this.

In *Shelton v. R. R.,* 193 N. C., 670 (674), it is written: "It is thoroughly established in this State that if incompetent evidence is admitted over objection, but the same evidence has theretofore or thereafter been given in other parts of the examination without objection, the benefit of the exception is ordinarily lost. *Smith v. R. R.,* 163 N. C., 143; *Tillett v. R. R.,* 166 N. C., 515; *Beaver v. Fetter,* 176 N. C., 334; *Marshall v. Tel. Co.,* 181 N. C., 410." *S. v. Hudson,* 218 N. C., 219 (230).

The defendants contend that they are protected under the proviso to 4342, *supra:* "Nothing contained in this section shall extend to any person marrying a second time . . . nor to any person who at the time of said second marriage shall have been lawfully divorced from the bond of the first marriage."

The defendants contend that the question involved is: "Can the courts of North Carolina sustain a conviction upon an indictment charging bigamous cohabitation under Consolidated Statutes, N. C. Code, section 4342, when the evidence shows that both of the defendants have been legally and properly divorced under the laws of a sister State?" We do not think from this record that the defendants can make the contention in this jurisdiction.

*As to defendant O. B. Williams:* The evidence is to the effect that defendant O. B. Williams was married to Carrie Ora (Wyke) Williams on 30 May, 1916, in Caldwell County, N. C.; that they lived together as husband and wife between 23 and 24 years, or until about 7 May, 1940. That they had reared a family of four children. That she had not brought any action for divorce against him. That she lives about four miles east of Granite Falls, Caldwell County, N. C. On 26 June, 1940, O. B. Williams brought an action against Carrie Ora Williams,

in Clark County, Nevada. The complaint alleges that they were married in Granite Falls, N. C., in the month of November, 1916, and are now husband and wife. That for a period of more than six weeks immediately preceding the commencement of this action, he has been and now is a resident of Clark County, Nevada. He alleges that his wife during the time of their marriage has been guilty of extreme cruelty towards him, by her words, actions and conduct. The plaintiff in that action prays judgment against the defendant dissolving the bonds of matrimony existing between them and restoring said parties to the status of single persons. This complaint was filed by I. S. Thompson, attorney. It was subscribed and sworn to before I. S. Thompson, a notary public, on 26 June, 1940, who attached his seal. The affidavit of Publication of Summons was filed on 18 July, 1940. It was subscribed and sworn to before I. S. Thompson on 16 July, 1940, who attached his seal of office. The Order Directing Publication of Summons was made by Roger Foley, District Judge, on 18 July, 1940. The Summons issued by the clerk was dated 26 June, 1940. Below was written "I. S. Thompson, Atty. for plaintiff." Summons Returned and filed 22 August, 1940. The Order for Publication of Summons and Complaint by Roger Foley, District Judge (1) by publication for a period of four weeks, (2) on defendant in North Carolina by mailing.

The following affidavit was filed: "I received the within summons on the 18th day of July, A.D., 1940, and that I personally served the same upon the within named defendant, Mrs. O. B. Williams, on the 22nd day of July, A.D., 1940, at Granite Falls, County of Caldwell, North Carolina, by then and there delivering to her, the said defendant, personally, a copy of said summons attached to a certified copy of the complaint in the within entitled action. Dated this 22nd day of July, A.D., 1940. J. F. Parlier, Sheriff Caldwell County, State of North Carolina." Affidavit of Parlier, dated 22 July, 1940, as to service of summons before F. H. Hoover, clerk Superior Court of above State and county. Decree on 26 August, 1940, by Roger Foley, District Judge—the same practically as the decree of divorce heretofore set out in full which was granted Lillie Esther Hendrix. The only difference was to fit the facts as to the method of service. This action was numbered 10650.

Then comes the Judgment Roll, Praecipe for Default, signed by I. S. Thompson, attorney for plaintiff. Then Default Order, signed by the clerk, on 26 August, 1940. Then certain certificates, not material.

*As to defendant Lillie Shaver Hendrix:* The evidence is to the effect that defendant, Lillie Shaver Hendrix, was married to George Thomas Hendrix about 20 years ago (time of trial February-March Term, 1941), and lived in Caldwell County, N. C., as husband and wife until May, 1940. That he brought no action for divorce against her. That Lillie

STATE *v.* WILLIAMS.

Shaver Hendrix (action entitled Lillie Esther Hendrix), as plaintiff, brought an action against George Thomas Hendrix on 26 June, 1940, in Clark County, Nevada. The complaint alleges that they were married on 27 June, 1920, in Icard, N. C., and are now husband and wife. That for a period of more than six weeks immediately preceding the commencement of this action, she has been and is now a resident of Clark County, Nevada. She alleges that her husband willfully neglected, for over a year immediately preceding the action, to provide her with the common necessities of life, though able to do so, and has been guilty of extreme mental cruelty towards her by words, action and conduct, and during the term of their married life has been guilty of extreme cruelty towards her. The plaintiff prayed judgment against the defendant dissolving the bonds of matrimony existing between them, restoring said parties to the status of single persons. It was subscribed and sworn to before I. S. Thompson, a notary public, on 26 June, 1940, who attached his seal. He was also her attorney.

The affidavit for Publication of Summons was filed 22 July, 1940, subscribed and sworn to on 20 July, 1940, before I. S. Thompson, notary public, attaching seal. The Order Directing Publication of Summons was made by Roger Foley, District Judge. The Summons issued by the clerk was dated 26 June, 1940, and below was written "I. S. Thompson, Attorney for plaintiff." Affidavit of Mailing Copy of Complaint to defendant at Akron, Ohio, setting forth certain facts, was signed by Geo. W. Thompson (the last name the same as the attorney), not a party to the action, and subscribed and sworn to 10 August, 1940, before I. S. Thompson, notary public, attaching seal. Order Directing Publication of Summons was made by Roger Foley, 22 July, 1940, and also service on defendant at Akron, Ohio—which was never served.

Decree of Divorce was filed 4 October, 1940, by Roger Foley, District Judge. Then comes Judgment Roll; Praecipe for Default, signed by I. S. Thompson, attorney for plaintiff; then Default Order, signed by the clerk, 4 October, 1940. Then Affidavit of Lillie Roesselet, dated 16 September, 1940, as to plaintiff's residence from 15 May, 1940, up to and including 26 June, 1940. This was subscribed and sworn to 16 September, 1940, before I. S. Thompson, notary public, attaching seal, attorney for plaintiff, and also testimony of O. B. Williams as to her residence. Then affidavit of nonmilitary service of defendant, filed 4 October, 1940, signed by plaintiff and subscribed and sworn to before I. S. Thompson, notary public, seal attached. This action was numbered 10651.

In North Carolina the law is somewhat drastic, as it should be, in granting an absolute divorce. N. C. Code, *supra,* sec. 1659, is as follows: "Marriage may be dissolved and the parties thereto divorced from the

bonds of matrimony, on application of the party injured, made as by law provided, in the following cases: 1. If the husband or wife commit adultery," etc.

Section 1659 (a) is as follows: "Marriages may be dissolved and the parties thereto divorced from the bonds of matrimony on the application of either party, if and when the husband and wife have lived separate and apart for two years, and the plaintiff in the suit for divorce has resided in the State for a period of one year. This section shall be in addition to other acts and not construed as repealing other laws on the subject of divorce." There are other provisions not necessary to set forth.

Section 1661 provides that the affidavit filed with the complaint must state: "That the facts set forth in the complaint are true to the best of affiant's knowledge and belief, and that the said complaint is not made out of levity or by collusion between husband and wife; and if for divorce, not for the mere purpose of being freed and separated from each other, but in sincerity and truth for the causes mentioned in the complaint. The plaintiff shall also set forth in such affidavit, either that the facts set forth in complaint, as grounds for divorce, have existed to his or her knowledge at least six months prior to the filing of the complaint, and that complainant has been a resident of the State for one year next preceding the filing of the complaint," etc.

If these allegations above are not shown, the court has no jurisdiction. In *Holloman v. Holloman,* 127 N. C., 15 (16), it is said: "That requirement is for the good of the public at large, and not for the convenience or benefit of the parties to the action. The affidavit was intended to prevent bad faith and collusion on the part of the parties to the action, and is an indispensable part of the complaint and application and, if it is wanting, there is no jurisdiction in the court." *Woodruff v. Woodruff,* 215 N. C., 685 (689).

In this State a jury must pass on the facts. N. C. Code, *supra,* sec. 1662, is as follows: "The material facts in every complaint asking for a divorce shall be deemed to be denied by the defendant, whether the same shall be actually denied by pleading or not, and no judgment shall be given in favor of the plaintiff in any such complaint until such facts have been found by a jury, and on such trial neither the husband nor wife shall be a competent witness to prove the adultery of the other, nor shall the admissions of either party be received as evidence to prove such fact."

In 27 Corpus Juris Secundum, p. 1295, the following is stated: "Where plaintiff only is domiciled in the state of the forum, and has obtained a decree of divorce for a cause recognized as valid in such state, after constructive service of process on defendant, according to the course

and practice of the court, a court of another state will recognize the decree when required to do so by a statute of that state; but it is not obliged to do so by the full faith and credit clause of the Federal Constitution except where, as shown *infra* this section, the matrimonial domicile is in the state where the decree is rendered. Even though a court of another state is not required by constitution or statute to recognize and give effect to the decree, it may do so as a matter of comity and in some states will do so unless there is some good and valid reason to the contrary; but in a few states the courts require the presence of certain conditions before they will extend recognition; and in other states recognition is refused," citing many authorities. *Pridgen v. Pridgen*, 203 N. C., 533.

In 27 C. J. S., sec. 333, at pp. 1296-7, we find: "Where, however, the state of plaintiff's domicile is not also the matrimonial domicile, a decree of divorce based on substituted service and without personal service on, or appearance by, defendant, although enforceable in the jurisdiction where rendered, is not entitled to obligatory recognition or enforcement in other states or in the District of Columbia in virtue of the full faith and credit clause of the Federal Constitution, although the courts of other states or of the District of Columbia are not prevented from recognizing such decrees on principles of comity if they see fit, and will do so, as a rule, unless contrary to public policy or to good morals, but they are not bound to do so, and the courts of some states do not."

The sole question arising under Article IV, section 1, of the Federal Constitution in this case is whether a divorce granted in the State where the plaintiff alone is domiciled is entitled to full faith and credit when the defendant is only served with process constructively and makes no appearance in the action. This question is answered in the negative by the celebrated case of *Haddock v. Haddock*, 201 U. S., 562, 26 Sup. Ct., 525, 50 L. Ed., 867, justly recognized as a landmark in the law of foreign divorces.

The divorces obtained by the defendants in actions in Nevada against North Carolina citizens, with service by publication in one case and personal service outside the State in the other, clearly come within the scope of the decision in *Haddock v. Haddock, supra,* and recognition is not required by the Federal Constitution.

The carefully prepared brief of defendants cites cases in other jurisdictions that differ from the well-settled law in this State. The most recent of our cases is *Tyson v. Tyson*, 219 N. C., 617 (618-19), which says: "It is fundamental that a state 'has no power to enact laws to operate upon things or persons not within her territory.' *Irby v. Wilson, supra* (21 N. C., 568). Notice and hearing are essential to due process of law under the Fourteenth Amendment of the Constitution of the

United States, McGehee, Due Process of Law, 76; Honnold, Supreme Court Law, 847; *Scott v. McNeal,* 154 U. S., 34 (36), 38 L. Ed., 896 (901); and there is neither notice nor hearing under such fictional service. *Pennoyer v. Neff, supra* (95 U. S., 714, 24 L. Ed., 565). Whatever the effectiveness of such a proceeding where both parties are within the jurisdiction of the forum, it has no extraterritorial effect upon a resident of another state or the matrimonial status there existing, unless the laws of the state of such residence recognize the proceeding as valid. Here they do not. It has been the law of this State since early times that a divorce decree obtained in a foreign state against a resident of this State, where there has been no personal service within the jurisdiction of the forum, and no answer or appearance or other participation in the proceeding which might be considered its equivalent, is void here. *Irby v. Wilson, supra* (21 N. C., 568); *Arrington v. Arrington,* 102 N. C., 491 (512), 9 S. E., 200; *Harris v. Harris,* 115 N. C., 587, 20 S. E., 187; *S. v. Herron,* 175 N. C., 754, 94 S. E., 698; *Pridgen v. Pridgen, supra* (203 N. C., 533, 539)."

The defendants excepted and assigned error to the following portion of the charge of the court—a contention, but correct in principle: "The State contends that these defendants each had a spouse living in the State of North Carolina. That the male defendant has a wife living, and had at the time of the second marriage or purported marriage contract. That the *feme* defendant, the female defendant, had at that time a living husband in the State of North Carolina. That no service was had upon either of them that in law was binding upon the persons residing in Caldwell County, North Carolina, that is, Mrs. O. B. Williams and Mr. Hendrix. That neither of these persons, to wit, Mrs. Williams and Mr. Hendrix, personally or by attorney, made any appearance in the courts of Nevada and, therefore, the entire proceedings in the State of Nevada was void. That they went to the State of Nevada not to establish a *bona fide* residence, but solely for the purpose of taking advantage of the laws of that state and obtain a divorce through fraud upon that court."

The court charged the law fully, as laid down in *Pridgen v. Pridgen, supra,* 203 N. C., 533 (539), also *S. v. Herron, supra,* 175 N. C., 754. In these cases many authorities are cited to sustain the charge in the court below.

In regard to the postal card, the court charged as follows (which we think correct): "The defendants offered a card in evidence, and with respect to that card the court charges you, gentlemen of the jury, that the card indicated or agreed to do certain things, but the card within itself, in law, does not constitute a personal appearance. If the husband of Mrs. Hendrix had done what the card purports that he would do if the

papers were sent to him, that would have constituted a personal appearance, but by promising to make a personal appearance by attorney does not constitute one. It takes more than that. . . . It takes more than a promise to make an appearance or accept service or to constitute service. There must be a carrying out of that promise." After reciting the facts: "Whereupon, the court charges you as a matter of law that the purported or attempted service of the sheriff of Caldwell County upon the defendant's wife, Mrs. Williams, of the pleadings and papers to this State from the State of Nevada had no effect in law, because the sheriff has no authority to serve them, and the fact that he did so amounted to nullity, which means nothing. Therefore, she was not brought into the State of Nevada by virtue of the attempted service, and the court so instructs you."

This Court has held that a *bona fide* belief in the invalidity of a first marriage is not a defense to a prosecution for bigamy when in fact the marriage was valid and subsisting. *S. v. Robbins,* 28 N. C., 23, *supra.* There seems to be no reason why a defendant's belief that a former marriage has been dissolved when in fact it has not been under the laws of this State should be any more efficacious as a defense. It is submitted, therefore, that the rule established in *Irby v. Wilson,* 21 N. C., 568, that foreign *ex parte* divorces will not .be recognized in this State applies in criminal cases to the same extent that it applies in civil cases.

We think the charge correct from the facts appearing of record. Most of the exceptions and assignments of error are to the charge of the court below, none of them can be sustained from the view of the well-settled law we take in this case. None constitute prejudicial .or reversible error.

The record discloses that defendant O. B. Williams left his wife, with whom he had been married and lived as husband and wife for some twenty-three years and had reared a family of four children, in Caldwell County, N. C., on 7 May, 1940. On 26 June, 1940, a little over a month later, a summons and complaint were filed, signed by him, in the Eighth Judicial District Court of Clark County, Nevada (Otis Baxter Williams *vs.* Carrie Ora Williams), alleging that he was a resident for more than six weeks immediately preceding the commencement of the action of said county and state. The complaint alleged as a cause for divorce against the defendant "extreme cruelty," etc. This complaint was filed by I. S. Thompson, attorney for O. B. Williams, plaintiff. Thompson was also notary public and it 'was subscribed and sworn to before him. Affidavit of publication was subscribed and sworn to before I. S. Thompson, who was attorney and notary public. No personal service on defendant, Carrie Ora Williams, or appearance by her was made. The sheriff of Caldwell County, N. C., delivered a summons and

complaint on 18 July, 1940. Decree of divorce signed by Roger Foley, District Judge, signed 26 August, 1940, finds certain facts and grants the divorce without a jury finding the facts. On 4 October, 1940, O. B. Williams married Lillie Esther Hendrix in Clark County, Nevada. They returned almost immediately after the marriage and lived together as husband and wife in Avery County, North Carolina, near Lenoir, North Carolina.

The record discloses that defendant Lillie Shaver Hendrix was married to Thomas George Hendrix about twenty years and they lived together as husband and wife until May, 1940. On 26 June, 1940, a little more than a month after leaving her husband, she had a summons issued and filed a complaint against him in the Eighth Judicial District Court of Clark County, Nevada, entitled Lillie Esther Hendrix *vs.* Thomas George Hendrix, alleging that she was a resident for more than six weeks immediately preceding the commencement of the action and was a resident of said county and state; alleging cause for divorce that her said husband had "willfully neglected to provide for her," etc., and "extreme mental cruelty." This complaint was filed by I. S. Thompson, her attorney. Thompson was also a notary public and it was subscribed and sworn to before him as notary public. Affidavit of publication was subscribed and sworn to before her attorney, and as notary public. No personal service on defendant, George Thomas Hendrix, or appearance by him. The postal card introduced in evidence was no acceptance of service or appearance. The summons was published in a local paper once a week for four weeks. Decree of divorce signed by Roger Foley, District Judge, 4 October, 1940, finds certain facts and grants the divorce without a jury finding the facts. On the same day, 4 October, 1940, she married O. B. Williams in Clark County, Nevada. They came almost immediately after the marriage to North Carolina, and lived together as husband and wife in Avery County, near Lenoir, North Carolina. They employed the same attorney, filed summons and complaint on the same day, and immediately married on the day the decree of divorce was granted Lillie Shaver Hendrix. O. B. Williams had obtained a decree of divorce a short time before, he was represented by the same attorney and the decrees of divorce were granted by the same court. The actions were numbered 10650 and 10651. The record discloses not only no personal service, as required by the decisions of this Court, but all the evidence indicates collusion between the defendants, and bad faith in attempting to secure decrees of divorce, contrary to the laws of this State.

For the reasons given, we see no prejudicial or reversible error in the trial in the court below.

No error.

BARNHILL, J., concurring: When the State offered evidence tending to show the first marriage of each of the defendants; that the wife of the defendant Williams and the husband of the defendant Hendrix are each still living; the second contracts of marriage and subsequent cohabitation of the defendants within this State it made out a *prima facie* case which, nothing else appearing, would require a verdict of guilty. That each of the defendants had been divorced was a fact to be proven in defense. *S. v. Norman,* 13 N. C., 222; *S. v. Melton,* 120 N. C., 591; *S. v. Herron,* 175 N. C., 754, 94 S. E., 698; *Thompson v. S.,* 20 Ala., 12; *Com. v. Bolich,* 18 Pa. Co. Ct., 401. Hence the question here presented is this: Have the defendants presented evidence of a valid defense?

The decrees of divorce relied upon by defendants were obtained in the State of Nevada on constructive service. The court rendering the judgments had no jurisdiction of the person of the respective defendants therein. *Arrington v. Arrington,* 102 N. C., 491, and 127 N. C., 190; *Harris v. Harris,* 115 N. C., 587; *Pridgen v. Pridgen,* 203 N. C., 533, 166 S. E., 591; *Tyson v. Tyson,* 219 N. C., 617; *Thompson v. S., supra;* *Bell v. Bell,* 181 U. S., 175, 45 L. Ed., 804.

Marriage is regarded as creating a status within the protection and control of the laws of the matrimonial domicile which, from considerations of public policy, will not be deemed destroyed unless the resident party has been brought within the jurisdiction of the foreign state by more than constructive service. *Tyson v. Tyson, supra.*

Judgments of divorce rendered by the foreign state are not protected by the full faith and credit clause (Art. IV, sec. 1) of the Federal Constitution. The mere domicile within the state of one party to the marriage does not give the courts of the state jurisdiction to render a decree of divorce enforceable in all the other states by virtue of the full faith and credit clause of the Federal Constitution against a nonresident who did not appear and was only constructively served with notice of the pendency of the action. *Haddock v. Haddock,* 201 U. S., 562, 50 L. Ed., 867; *S. v. Herron, supra; Thompson v. S., supra.* They are subject to attack for want of jurisdiction of the rendering court over the person of the defendant named therein. *Thompson v. Whitman,* 85 U. S., 897; *Haddock v. Haddock, supra; S. v. Herron, supra.*

That the marriage of the defendants was consummated in another state is immaterial. "If any person, being married, shall contract a marriage with any other person, outside of this State, which marriage would be punishable as bigamous if contracted within this State, and shall thereafter cohabit with such person in this State, he shall be guilty of a felony and shall be punished as in cases of bigamy." C. S., 4342; *S. v. Moon,* 178 N. C., 715, 100 S. E., 614; *S. v. Herron, supra.*

It follows that under our law the defendants failed to establish a divorce or second marriage effective as a valid defense to the prosecution. The divorce decrees, being rendered upon constructive service, were without force or effect within this State. Their subsequent marriage, had it been contracted in this State, was bigamous. Cohabitation thereunder within this State constituted a bigamous cohabitation.

For the reasons stated I agree that the judgment below should be affirmed.

STACY, C. J., and WINBORNE, J., join in this opinion.